1  Jim L. Banks (appearing pro se)
2  JimLBanks@verizon.net
   505 Alabama Street
3  Huntington Beach, CA 92648
4  (714) 813-1322
   (714) 276-9695 (fax)
5
6
7
8
9
10            **IN THE UNITED STATES DISTRICT COURT**
11          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12                    **SOUTHERN DIVISION**
13                                    **8:23-cv-01026-MWF (E)**
   JIM L. BANKS, an individual,        )    Docket Number: _____
14                                      )
15              Plaintiff,             )
                                        )    **COMPLAINT FOR DECLARATORY**
16              v.                     )    **RELIEF, INJUNCTIVE RELIEF, AND**
                                        )             **DAMAGES**
17  THE PACIFIC CREST TRAIL           )
18  ASSOCIATION, a California          )            **PAID**
    Nonprofit Public Benefit Corporation; )
19  MEGAN WARGO, CEO of the            )
20  Pacific Crest Trail Association,  in her )
    individual capacity; THE US FOREST )
21  SERVICE, an Agency of the US       )
22  Department of Agriculture; JODY    )
23  HOLZWORTH, Deputy Regional         )
    Forester of Region 5 of the US Forest )
24  Service, in her individual capacity )
26              Defendants.
27
28
                         COMPLAINT
                              1

1                              **JURISDICTION AND VENUE**

2    1.      This case arises directly under the Equal Protection and Due Process Clauses

3    of the Fourteenth Amendment and the Fifth Amendment of the US Constitution,

4    and United States Department of Agriculture ("USDA") departmental regulation

5    DR 4330-002.

6    2.      The Court has jurisdiction over the complaint under:  28 U.S.C. Section

7    1331 (Federal Question) and 28 U.S.C. Section 1346(a)(2) (United States as a

8    defendant).  As to Counts II and III, this action is brought pursuant to *Bivens v. Six*

9    *Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 338 (1971).*

10   3.      The Court has personal jurisdiction over the Defendants because they are all

11   residents of the State of California.

12   4.      Venue is proper under 28 USC Section 1402(a)(1) and 28 USC Section

13   1391(e)(1)(C), as Plaintiff resides in Orange County, California.

14   5.      This Court has the authority to enter a declaratory judgment and to provide

15   permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of

16   Civil Procedure and 28 USC Sections 2201 and 2202.

17                                **INTRODUCTION**

18   6.      The Pacific Crest National Scenic Trail ("PCT") is a 2,652 mile-long hiking

19   trail that runs from Mexico to Canada through the states of California, Oregon, and

20   Washington.  The PCT was established on October 2, 1968 by an Act of Congress

21   P.L. 90-543, referred to as the National Trails System Act (the "Trails Act"), and is

22   codified at 16 USC 1241 et seq.  The Trails Act provides that the PCT shall be

23   administered by the Secretary of Agriculture, in consultation with the Secretary of

24   the Interior.  The Trails Act further provides that the Secretary of Agriculture may

1    enter into written cooperative agreements with private organizations or individuals

2    to operate, develop, and maintain any portion of the PCT.

3    7.    The Pacific Crest Trail Association ("PCTA") is a California nonprofit

4    public benefit corporation.  The mission of the PCTA, according to its Bylaws, is to

5    protect, preserve, and promote the PCT.  The PCTA receives significant funding

6    from the US Forest Service/USDA.  The Forest Service recognizes the PCTA as its

7    major partner in the planning, development, management, operation, and

8    protection of the PCT.

9    8.    Plaintiff is an avid hiker and backpacker who started hiking the PCT in

10    2007.  Each year Plaintiff hikes portions of the PCT and hopes to complete the

11    entire PCT in the next couple of years.

12    9.    Plaintiff also believes that it is important to volunteer to help maintain the

13    PCT.  In 2008 Plaintiff starting volunteering to do trail work and currently has

14    performed over 3,625 hours of volunteer work for the PCTA.  In 2017 Plaintiff was

15    awarded the "Extra Mile Award" by the PCTA which is given "to honor those who

16    have gone the extra mile, beyond the scope of normal volunteering for the benefit

17    of the trail."

18    10.   The PCTA has divided the responsibility for trail maintenance projects into

19    various sections up and down the trail.  Typically, there is a group leader (usually a

20    volunteer, sometimes a PCTA employee) that decides where to have a trail

21    maintenance project, what kind of work will be done, and for how many days.  The

22    project is then submitted to the Forest Service for approval.  This approval is

23    required by Forest Service regulations.  Once approved by the Forest Service, the

24    project is then put on the PCTA's website letting potential volunteers know about

1   the project.  If a volunteer is interested in a particular project, then they sign up for
2   the project on the website.

3   11.   In August of 2022, the PCTA and the Forest Service denied Plaintiff an
4   opportunity to participate in a PCTA trail maintenance project on the PCT because
5   of his sexual orientation and gender identity.

6   12.   Accordingly, Plaintiff brings this action under the Equal Protection and Due
7   Process Clauses of the Fourteenth Amendment and the Fifth Amendment, to
8   vindicate his rights, seek compensation for his injuries, and to prevent the Forest
9   Service and the PCTA from treating individuals differently because of their sexual
10  orientation and gender identity.

11                                          **PARTIES**

12  13.   Plaintiff, Jim L. Banks, is a citizen of the United States and resident of
13  Orange County, California.

14  14.   Defendant Pacific Crest Trail Association is a California Nonprofit Public
15  Benefit Corporation whose corporate headquarters are located at 2150 River Plaza
16  Drive, Suite 155, Sacramento, CA 95833.

17  15.   Defendant Megan Wargo is being sued in her individual capacity.  She is the
18  acting Chief Executive Officer of the Pacific Crest Trail Association.  Ms. Wargo's
19  office is located at the PCTA's corporate headquarters in Sacramento.

20  16.   Defendant US Forest Service is an agency of the US Department of
21  Agriculture and is charged with administering and maintaining the PCT.

22  17.   Defendant Jody Holzworth is being sued in her individual capacity.  She is a
23  Deputy Regional Forester of Region 5 of the US Forest Service.  Ms. Holzworth's

1  office is located at the US Forest Service Regional Office at 1323 Club Drive,

2  Vallejo, CA 94592.

3  18.   Plaintiff believes that additional Defendants, current and former employees

4  of the PCTA and Forest Service, may be identified through discovery or otherwise

5  and reserves the right to amend this Complaint to add those Defendants as

6  necessary.

7  19.   [reserved for additional Defendants, if any.]

8  **STATEMENT OF FACTS**

9  20.   Plaintiff incorporates herein each of the foregoing paragraphs 1 through 19.

10  21.   In 2015, as authorized by the Trails Act, the PCTA entered into a

11  Memorandum of Understanding ("MOU") with the United States Forest Service,

12  an agency of the United States Department of Agriculture ("USDA").  The MOU is

13  attached as "**Exhibit 1**."  The MOU is the contractual document that allows PCTA

14  volunteers to participate on trail maintenance projects occurring on the PCT.  The

15  MOU provides that in cases where PCTA volunteers work on National Forest

16  System lands, the PCTA volunteers will be considered participants authorized by

17  the Volunteers in National Forests Act of 1972, 16 USC Section 558, and thereby

18  become Forest Service Volunteers.  The MOU is an extensive and detailed contract

19  whose stated purpose is to document the cooperation between the Forest Service

20  and the PCTA in accordance with the following provisions:  (i) to facilitate the

21  improvement, management and operation of the Pacific Crest National Scenic Trail

22  as a single long-distance trail, consistent with the PCT Comprehensive

23  Management Plan and Government Land, Resource, and Visitor Use Management

24  Plans; (ii) to facilitate the coordination, development, and distribution of

25  informational, educational and interpretive material related to the PCT; (iii) to

1    encourage and manage volunteer involvement in the management, operation, and

2    protection of the PCT; (iv) to recognize the PCTA as the major partner in the

3    planning, development, management, operation, and protection of the PCT; and (v)

4    to document the agreement to coordinate in the planning, development,

5    management, operation, and protection of the PCT.  Additionally, the MOU

6    provides a long list of the things that the PCTA is required to do under the MOU,

7    one of which is to develop and maintain a dedicated website.  This website which

8    is required by the Forest Service is the source of the publication of the volunteer

9    trail maintenance project that is at the heart of this dispute.

10    22.    Sometime in late July or early August of 2022, Plaintiff logged onto the

11    PCTA's website to look for volunteer trail maintenance projects on the PCT in

12    northern Washington.  Plaintiff was interested in this location because he was

13    planning a backpacking trip in northern Washington and because he had always

14    wanted to do a volunteer maintenance project in that area of the PCT, as all of his

15    previous volunteer work on the PCT had been in Southern California.

16    23.    Plaintiff saw on the website that there was going to be a multi-day (Sept. 8-

17    11) trail maintenance project on the PCT at Harts Pass which is near where he was

18    going to end his planned hike and the dates of the project fit within his timeframe.

19    Plaintiff saw that the maximum number of volunteers was 10 and that the project

20    was not yet full.  It seemed to be a perfect fit.

21    24.    Then, to Plaintiff's astonishment, he saw that the description of the project

22    provided as follows:  "This project is for people who identify as Lesbian, Gay,

23    Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit and other queer

24    identities . . . If you are straight and cisgender please respect that this trail

1    maintenance event is not for you."  A copy of the website page, printed from the
2    website on August 12, 2022, is attached as "**Exhibit 2**."

3    25.    Given that Plaintiff is a straight, heterosexual, biological male, Plaintiff was
4    in a state of shock and amazement to discover that the PCTA, and the Forest
5    Service through its approval of the project, would actually prohibit him from
6    participating in a volunteer trail maintenance project on the PCT solely because of
7    his sexual orientation and gender identity.

8    26.    Plaintiff contemplated registering for the project at that point anyway, but
9    thought that he would not be allowed to or would later be kicked off the list once it
10   was discovered that he was straight and cisgender.  Additionally, having been told
11   that people like him would not be welcome, Plaintiff also had concerns of both
12   how he would be treated and for his own safety, especially given the fact that this
13   was a multiday project where you work, cook, eat, wash up, camp, and sleep in
14   close proximity with the other volunteers and crew leaders.  Having been told
15   explicitly that this project was not for him, Plaintiff logged off the website without
16   registering for the project.  On August 8, 2022, Plaintiff logged onto the website
17   again just to make sure he had read it correctly.

18   27.    On August 12, 2022, after taking some time to think about the
19   discriminatory restriction concerning who was welcome on the project and what
20   course of action to take, Plaintiff decided to log onto the PCTA's website again and
21   try to register for the project anyway just to see what would happen.  However, by
22   this time the project was full and anyone trying to register was instead put on a
23   waiting list.  It was at this point that Plaintiff decided to start documenting the facts
24   and printed a copy of the website page.  It is this copy, dated August 12, 2022, that
25   is attached as Exhibit 2.

28.    Plaintiff could not understand how this kind of discriminatory behavior could be coming from the PCTA and the Forest Service when it was in direct conflict with the PCTA's own Code of Conduct, the USDA's and Forest Service's policy positions, and Presidential Executive Orders, as well as the U.S. Constitution.

29.    The PCTA has a "Volunteer Code of Conduct" that must be agreed to by all volunteers before being allowed to participate in a trail maintenance project.  [The word "Volunteer" refers to persons doing volunteer work, it does not refer to whether agreeing to it is voluntary or mandatory, it is mandatory.]  A copy of the PCTA Volunteer Code of Conduct is attached as "**Exhibit 3**."  The Code states that "The Code applies to interactions that occur across the PCTA's operations, including in offices, on trips, at events, programs and training, in meetings, on the trail, at social events, in written communication, including online and social media, and at all other events, activities and places where we are ambassadors for the PCT. Therefore, this Code applies to every arena where PCTA and its network of partners operate, and includes all PCTA volunteers, PCTA employees and anyone who partners or interacts with the PCTA by joining us in the Code."  (emphasis added).   The Code defines misconduct as actions in violation of the Code's Standard of Conduct, and provides a list of examples of misconduct, the first of which is:  "Unwelcome, discriminatory, or exclusionary behavior toward others of any kind based on identities including, but not limited to, race, ethnicity, gender identity, gender expression, and sexual orientation."  (emphasis added).  The Appendix to the Code provides that "PCT network partners believe in, uphold, and ethically value Federal Human Rights Laws.  According to the law, protected status includes race, color, religion, sex (including pregnancy and gender identity), sexual orientation, national origin," and so forth.  (emphasis added).

30.     The USDA and the Forest Service use a form OF-301A entitled "Volunteer Service Agreement—Natural & Cultural Resources" for volunteers to provide their name and contact information, parental consent if the volunteer is under 18, and other information.  If there is a group of volunteers involved, the group leader fills out the OF-301A and the other volunteers sign the accompanying Form OF-301b. Both forms state that the US Department of Agriculture prohibits discrimination in all programs and activities based on gender, sexual orientation and other categories.  Copies of these Forms are attached as "**Exhibit 4**."

31.     On January 20, 2021, newly elected President Biden issued Executive Order 13988 which is entitled "Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation."  A copy of the Executive Order is attached as "**Exhibit 5**."  In the Executive Order the President stated that "It is the policy of my Administration to prevent and combat discrimination on the basis of gender identity or sexual orientation, . . . "

32.     On March 29, 2021, USDA Secretary Thomas J. Vilsack issued to all USDA employees (this includes Forest Service employees) the department's "Commitment to Civil Rights."  A copy of the Commitment is attached as "**Exhibit 6**."  The Commitment states that "since the Civil Rights Act became law in 1964, our nation has made great strides to prohibit discrimination on the basis of race, ethnicity, sex, sexual orientation, or national origin. . . . . our work to ensure civil rights and equal treatment is far, far from over.  That's why it's important that we are united in calling out and ending discrimination in any form."  He goes on to state that the Office of the Assistant Secretary for Civil Rights and respective agency Civil Rights Offices ensure "compliance with applicable laws, regulations, and policies for USDA customers and employees regardless of race, color, national

1   origin, sex (including gender identity and expression), religion, age, disability,

2   sexual orientation, marital or familial status . . ." etc.

3   33.    On June 8, 2022, USDA Secretary Vilsack stated in his USDA Civil Rights

4   Policy Statement that "No employee, former employee, or applicant for

5   employment at the Department will be denied equal opportunity because of race,

6   color, sex, national origin, religion, age, disability, pregnancy, sexual orientation,

7   gender identity, genetic information, retaliation, or any other non-merit based

8   factor . . . . I will hold all employees and managers accountable for doing their part

9   to ensure all USDA applicants, customers, constituents, and stakeholders are

10  provided equal access to all opportunities, programs, and services available

11  through the USDA." In the first sentence quoted above, Secretary Vilsack referred

12  to employees, but it would be hard to imagine that a federal government

13  department would deny to volunteers what it guarantees to employees in terms of

14  its civil rights policy. Furthermore, volunteers who do the physically demanding

15  work of maintaining our wilderness trails certainly are USDA stakeholders who

16  deserved to be "provided equal access to all opportunities, programs, and services

17  available through the USDA." A copy of the Policy Statement is attached as

18  "**Exhibit 7**."

19  34.    On August 12, 2022, Plaintiff sent an email to Defendant Megan Wargo,

20  CEO of the PCTA. In the email, Plaintiff notified Defendant Wargo that the

21  project that was exclusively for the LGBTQIA+ community to the exclusion of

22  people who are not was discriminatory and a violation of his civil rights. The

23  email stated that it was intended as a heads-up warning to her to give her a chance

24  to stop the violation of his civil rights before it happened. A copy of this email is

25  attached as "**Exhibit 8**."

35.    On August 16, 2022, having not heard anything from Defendant Wargo, Plaintiff filed Form AD-3027 with the United States Department of Agriculture ("USDA") Office of the Assistant Secretary for Civil Rights in Washington, D.C. This Form is entitled "Program Discrimination Complaint Form."  A copy of the filed Form AD-3027, with attachment, is attached as "**Exhibit 9**."

36.    The Program Discrimination Complaint Form was filed pursuant to USDA Regulation DR 4330-002 which was promulgated on July 27, 2021.  A copy of DR 4330-002 is attached as "**Exhibit 10**."

37.    Regulation DR 4330-002 is entitled "Nondiscrimination in Programs and Activities Receiving Federal Financial Assistance from USDA."  The stated purpose of the regulation is to establish USDA policy for ensuring programs and activities receiving Federal financial assistance from USDA are in compliance with applicable civil rights laws, including the prohibition against discrimination in those programs and activities and to establish policy for achieving compliance through civil rights complaints against recipients of Federal financial assistance from USDA who operate those programs and activities.

38.    Section 3 of DR 4330-002 provides that the regulation "applies to all programs and activities receiving Federal financial assistance from USDA Mission Areas and agencies."

39.    Section 4(a) of DR4330-002 provides that "No person will be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in programs or activities receiving financial assistance from USDA based on: (1) Race; (2) Color; (3) National origin; (4) Age; (5) Disability; (6) Because of prior civil rights activity; And as applicable: (7) Sex (including sexual orientation and gender identity); (8) Religion; or (9) Political beliefs."

40.     On August 19, 2022, Plaintiff received an email from Defendant Wargo.  A copy of this email is attached as "**Exhibit 11**."  The email acknowledges receipt Plaintiff's email dated August 12, 2022 and states that the PCTA is seeking advice from their counsel.  Plaintiff was very surprised by Defendant Wargo's reply given that she is very aware of the PCTA's Volunteer Code of Conduct referred to in Paragraph 29 above.  Plaintiff believes that Defendant Wargo participated in the drafting of the Volunteer Code of Conduct.  In any case, as CEO of the PCTA she is certainly very aware of it.  It is a Code of Conduct that expressly sets forth that it is misconduct on the part of any PCTA employee who expresses, in written communication, including online (such as the website for volunteer trail maintenance announcements), unwelcome, discriminatory, or exclusionary behavior toward others of any kind based on identities including, but not limited to, gender identity, gender expression and sexual orientation.  Defendant Wargo was made aware of the situation in time to stop this violation of not only the Code of Conduct but Plaintiff's constitutional rights and she chose not to do so.  Plaintiff has not received any further communication from Defendants PCTA and Wargo concerning this matter.

41.     On August 25, 2022, Plaintiff received an email from Monica Bailey, Equal Opportunity Specialist with the USDA Office of the Assistant Secretary for Civil Rights in Washington, D.C.  The email stated that the response in reference to Plaintiff's discrimination complaint was attached.  The attachment was a letter from Ms. Sandra Hammond, Lead Equal Opportunity Specialist, Programs Complaint Division, USDA.  The letter acknowledged receipt of Plaintiff's discrimination complaint.  A copy of the email and the letter are attached as "**Exhibit 12**."

42.     On September 12, 2022, Plaintiff received a telephone call from Ms. Lois Lawson.  Plaintiff believes Ms. Lawson's title is Forest Service Director of Civil Rights for Region 5.  Also on the call was Ms. Gwendlyn Bryan.  The purpose of the call was to discuss the discrimination complaint.  Plaintiff basically just repeated what was already contained in the discrimination complaint.  On September 30, 2022, Ms. Lawson called Plaintiff again to discuss whether Plaintiff thought the discrimination complaint came under title VI or title VII of the Civil Rights Act of 1964.  Plaintiff expressed no opinion as to the provisions of the Civil Rights Act.

43.     On October 21, 2022, Plaintiff received a letter from Mr. Archie Crawford, Director of the Program Complaints Division, Center for Civil Rights Enforcement, USDA, in Washington, D.C.   The letter is attached as "**Exhibit 13**." The letter stated that their informal complaint process was concluded on October 6, 2022 and that they were unable to resolve the issues in the discrimination complaint under the informal process.  The letter then stated that the next steps in the process were Investigation and Adjudication.

44.     On November 22, 2022, Plaintiff received another letter from Mr. Archie Crawford.  A copy of this letter is attached as "**Exhibit 14**."  The letter states "Based on the information provided, you are alleging discrimination on the bases of sexual orientation and gender identity.  Although they are prohibited bases of discrimination, they are not enforceable or covered by USDA civil rights statutes or Departmental regulations under an assisted program.  While we have jurisdiction over program discrimination complaints, we do not have the authority to process agency program policy or procedural issues.  Therefore, we are forwarding your concerns to the office listed below for consideration."  The letter lists USDA-Forest Service, Anzanette Randall, Deputy Executive Director, Office

1   of Civil Rights.  After more than 13 weeks after Plaintiff filed the discrimination

2   complaint with the USDA and with no changes to the allegation made in the

3   discrimination complaint, the USDA decided that jurisdiction over this matter lies

4   at the Forest Service level, not the USDA.

5   45.   On December 14, 2022, Plaintiff received an email from Defendant Jody

6   Holzworth with an attached letter dated December 9, 2022.  Defendant Jody

7   Holzworth is a Deputy Regional Forester of Region 5 of the US Forest Service.

8   Although it was never explained to Plaintiff how Defendant Holzworth became

9   involved in this matter, Plaintiff assumes that the matter was assigned to her from

10  the office of Ms. Anzanette Randall, Deputy Executive Director, Office of Civil

11  Rights, US Forest Service, as referenced in Paragraph 44 above.  Plaintiff was told

12  by a US Forest Service employee that Defendant Holzworth's duties include civil

13  rights matters.  A copy of the letter from Defendant Holzworth is attached as

14  "**Exhibit 15**."  In this letter (referred to herein as the "Determination Letter")

15  Defendant Holzworth determines that no discrimination took place.

16  46.   In the Determination Letter, Defendant Holzworth states that the claim

17  (referring to the Discrimination Complaint Form Plaintiff filed with the USDA)

18  "stated that you did not speak with anyone from the PCTA or Forest Service

19  regarding the information you reviewed on their website."  This is a categorically

20  false statement.  In the Discrimination Complaint Form, Plaintiff clearly stated that

21  he had sent an email (the email attached as Exhibit 4) to Defendant Wargo, the

22  CEO of the PCTA stating that the project that was exclusively for the LGBTQIA+

23  community to the exclusion of people who are not was discriminatory and a

24  violation of his civil rights.  The email stated that it was intended as a heads-up

25  warning to her to give her a chance to stop the violation of his civil rights before it

1   happened.  Obviously, Defendant Holzworth made her determination without even

2   having read the Complaint Form.

3   47.   In the Determination Letter, Defendant Holzworth states that "the Forest

4   Service has completed an investigation to understand and evaluate your claim."

5   This is an astonishing claim since no investigator from the Forest Service ever

6   spoke to Plaintiff.  The only contact Plaintiff had from any Forest Service

7   employee were the two telephone calls with Lois Lawson on September 9 and

8   September 30, 2022 referred to in Paragraph 42 above.  Those conversations were

9   nothing more than a restatement of what was in the Complaint Form.

10   48.   The first "information point" in the Determination Letter states that the

11   "project was showing as full when Mr. Banks accessed the project sign-up."  This

12   is another categorically false statement made by Defendant Holzworth,  As stated

13   in Paragraphs 22 through 27 above, the project was not full when Plaintiff first

14   logged onto the website.  Defendant Holzworth would have known this if a fair and

15   complete investigation had been conducted.

16   49.   The second and third "information points" in the Determination Letter are

17   nothing more than statements about how the automated sign-up system works.

18   These references to the automated sign-up system appear in several of the other

19   information points and are totally irrelevant to whether the project description of

20   who was and who was not welcome was discriminatory.  They are nothing more

21   than red herrings placed there in an attempt to misdirect the analysis of the

22   underlying discrimination claim.  For example, the third information point states

23   that "Mr. Banks was able to successfully sign up for the project waitlist without

24   specifically identifying with any LGBTQA+ designation."  The PCTA puts up a

25   discriminatory barrier to registration and then claims that the barrier was not real or

1   not totally impenetrable.  The language "If you are straight and cisgender please
2   respect that this trail maintenance event is not for you" has a chilling effect to any
3   straight, heterosexual person who wanted to register but then reads this language
4   and assumes they would not be welcome.  Proof of point is that when Plaintiff first
5   looked at the website and saw the exclusionary and discriminatory language
6   Plaintiff's thought was that he would not be allowed to sign up.  The take away
7   from reading that project description by anyone who is not LGBTQA+ is that I am
8   not welcome, I am excluded, and I cannot sign-up.  There is no way of knowing
9   how many other potential volunteers thought the same thing.

10   50.    The fourth "information point" in the Determination Letter constitutes
11   outright misconduct on the part of Defendant Holzworth.  It states as follows:  "It
12   is standard on the PCTA website to ask optional demographic questions whenever
13   someone creates a volunteer profile: one of which includes gender identity
14   preference.  These optional demographic questions are asked per the requirements
15   of the Forest Service Volunteer Service Agreement OF-301A form."  This is the
16   form which is attached as Exhibit 4.  The PCTA volunteer profile on their website
17   has a place where a volunteer can indicate their gender identity, but this is not a
18   requirement coming from the Forest Service or Form OF-301A contrary to what
19   Defendant states.  The form asks about the ethnicity and race of the volunteer but
20   there is no question about the gender, gender identity, or sexual orientation of the
21   volunteer.  The only time the words "gender" and "sexual orientation" appear on
22   the form is in the "Public Benefit Statement" where the form states that the USDA
23   prohibits discrimination in all programs and activities based on gender, sexual
24   orientation and other categories.  When Defendant Holzworth states that these
25   optional demographic questions are asked per the <u>requirements</u> of the Forest
26   Service Volunteer Service Agreement OF-301A form, it is an absolute false

1   statement when it comes to gender identity and sexual orientation.  The inclusion

2   of this information point about Form OF-301A is yet another attempt by Defendant

3   Holzworth to misdirect the analysis.  Gathering data about gender identity

4   preference is not the same as and has nothing to do with excluding or making it

5   look like you are excluding people from registering for a volunteer project based

6   on their gender identity or sexual orientation.  All of this verbiage in these

7   information points about how the sign-up system works is an attempt by

8   Defendants to misdirect the analysis of this case because they know they were

9   caught red-handed making discriminatory restrictions on who could participate in

10  the project and because otherwise they would be forced into the awkward position

11  for them of advocating for a position that holds that discrimination based on gender

12  identity and sexual orientation is allowable.

13  51.    The fifth "information point" in the Determination Letter states that Plaintiff

14  signed up for the project after it was displaying as full on the website and was

15  added to the waitlist.  It is true that when Plaintiff returned to the website a second

16  time and attempted to register the project was full and he was placed on the

17  waitlist.  However, as stated in Paragraphs 22 through 27 above, the project was

18  not full when Plaintiff first logged onto the website.  If there had been no language

19  in the description stating that the project was not for persons who are "straight and

20  cisgender," Plaintiff would have sign up at that point when the project was not yet

21  full.  If Defendant Holzworth had conducted a fair and professional investigation,

22  she would have known that and all this irrelevant discussion about how the

23  automated sign-up system works could have been avoided.

24  52.    The sixth "information point" in the Determination Letter states that "the

25  PCTA was offering trail work projects during this similar time frame in varying

26  locations and dates; this was not the only opportunity available with the

1   organization to participate in a volunteer activity." While there were other

2   projects, none of them provided the logistical requirements that Plaintiff had given

3   the date he was ending his section hike in the area (see Paragraphs 22 and 23

4   above). It appears that Defendant Holzworth is trying to infer that the

5   PCTA/Forest Service can discriminate on some volunteer trail projects as long as

6   there are other projects where they do not discriminate. An analogy to this would

7   be to argue that a café could refuse service to blacks, women, or gays as long as

8   there were other cafes in the vicinity that do serve blacks, women, and gays.

9   **CLAIMS FOR RELIEF**

10   **COUNT I**

11   **Denial of Equal Protection**

12   **U.S. Constitution Fifth and Fourteenth Amendments**

13   **(Against Defendants PCTA and US Forest Service)**

14

15   53.     Plaintiff incorporates Paragraphs 1 through 52 as though fully set forth

16   herein.

17   54.     Plaintiff states this cause of action against Defendants the PCTA and the US

18   Forest Service for purposes of seeking declaratory and injunctive relief and

19   challenges these Defendants' intentional actions in excluding Plaintiff, and anyone

20   else who is not LGBTQIA+, from participating in the volunteer trail maintenance

21   project described in Paragraphs 22 and 23 above because he is not Lesbian, Gay,

22   Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit or other queer

23   identities.

24   55.     The Fourteenth Amendment to the U.S. Constitution provides that no person

25   shall be denied equal protection of the laws and is made enforceable against these

1    Defendants through the due process clause of the Fifth Amendment to the U.S.

2    Constitution.  These Defendants violated Plaintiff's constitutional right to equal

3    protection of the laws.

4    56.    Defendant PCTA was operating under color of federal law.  The close and

5    direct relationship between the PCTA and the US Forest Service, as described in

6    Paragraph 21 above and as described in much more detail in the MOU that is

7    attached as Exhibit 1, meets several of the tests used by Federal Courts in

8    establishing whether a private enterprise acts under color of federal law and thus

9    can be considered a federal actor, including but not limited to, the public function

10   test, the nexus test, and the symbiotic relationship test.  An examination of the

11   MOU revels the extent of the interdependence between the Forest Service and the

12   PCTA.  The Forest Service is responsible for maintaining the PCT pursuant to the

13   Trails Act.  However, the Forest Service does not have enough trail crews to

14   maintain the PCT.  The PCTA, through the MOU, has stepped into the shoes of the

15   Forest Service to take over the government function of maintaining the PCT.

16   Without the PCTA the Forest Service would have to completely reinvent its

17   approach to managing and maintaining the PCT because it has delegated most of

18   its responsibilities to the PCTA.  Additionally, the PCTA would have no authority

19   to have its volunteers do trail maintenance on the PCT without the authority

20   granted to it by the Forest Service through the MOU, as private parties are not

21   allowed to work on the PCT without some grant of authority and permission such

22   as is found in the MOU.   The PCTA would have little to no reason to exist without

23   its close and integral relationship with the Forest Service, from whom it gets a

24   substantial amount of its funding.

1   57.   Defendants' exclusion of straight, heterosexual individuals like Plaintiff

2   from participating in the trail maintenance project treats straight, heterosexual

3   persons differently from LGBTQIA+ persons who are similarly situated.

4   58.   Under the Equal Protection Clause of the Fourteenth Amendment to the U.S.

5   Constitution, discrimination based on sex is presumptively unconstitutional and

6   subjected to heightened scrutiny.  Discrimination based on sex includes, but is not

7   limited to, discrimination based on gender, gender identity, and sexual orientation.

8   Defendant PCTA's exclusion of Plaintiff from the trail maintenance project and

9   Defendant US Forest Service's approval of the exclusion, discriminated against

10  Plaintiff on the basis of his gender identity and sexual orientation.

11  59.   A person's gender identity and sexual orientation bears no relation to a

12  person's ability to participate on and contribute to a trail maintenance project.

13  60.   Defendants' discrimination against Plaintiff is not related to any compelling

14  or important government interest. Indeed, it is not even rationally related to any

15  legitimate government interest.

16  61.   Solely as a result of Defendants' unconstitutional discrimination against

17  Plaintiff, Plaintiff was harmed by denying him the opportunity to participate in one

18  of his favorite activities, i.e., helping to maintain the PCT.  It is crucial to recognize

19  the profound impact that such exclusionary behavior has had on Plaintiff.  Plaintiff

20  has dedicated a significant part of the last 15 years of his life to helping maintain

21  the PCT and believed that the PCTA and US Forest Service were an organization

22  and an agency, respectively, that allowed every individual to participate and

23  contribute without prejudice or discrimination.

24

1

## COUNT II

2

### Denial of Equal Protection

3

### U.S. Constitution Fifth and Fourteenth Amendments

4
5
6

### (Against Defendant Megan Wargo in her individual capacity and possibly other individual defendants, current and former employees of the PCTA and the Forest Service, who may be identified through discovery or otherwise)

7

8    62.    Plaintiff incorporates Paragraphs 1 through 61 as though fully set forth

9    herein and specifically incorporates Paragraphs 54 through 61 in Count I as they

10   apply to Defendant PCTA to apply to Defendant Megan Wargo (and possibly other

11   Defendants to be named) as if they were repeated in this Count II.

12   63.    Plaintiff states this cause of action against Defendant Megan Wargo, in her

13   individual capacity, and possibly others, for purposes of seeking compensatory and

14   punitive damages and challenges these Defendants' intentional actions in excluding

15   Plaintiff from participating in the volunteer trail maintenance project described in

16   Paragraphs 22 and 23 above because he is not Lesbian, Gay, Bisexual,

17   Transgender, Questioning, Intersex, Asexual, Two-Spirit or other queer identities.

18   64.    This cause of action is based on a violation of Plaintiff's constitutional right

19   of equal protection of the law as set forth in the Fourteenth Amendment to the US

20   Constitution and made enforceable against the Defendants named in this Count II

21   pursuant to the provisions of the due process clause of the Fifth Amendment to the

22   US Constitution and is brought pursuant to *Bivens v. Six Unknown Named Agents*

23   *of the Federal Bureau of Narcotics, 403 U.S. 338 (1971).*  In *Bivens* the US

24   Supreme Court held that a federal officer acting under color of federal law may be

25   liable for damages for violating the constitutional rights of another. *Bivens*, 403

26   U.S. 397. *Bivens* would be directly applicable if additional defendants are named

1  that turn out to have been Forest Service Employees that knew of and/or approved

2  the discriminatory restrictions placed on who could participate in the trail

3  maintenance project at issue.

4  65.    Additionally, other federal courts have established that *Bivens* type causes of

5  action can be brought against a private party if the private party acted under color

6  of federal law.  See *Schowengerdt v. General Dynamics Corp.* 823 F.2d 1328,

7  1337-38 (9th Cir. 1987).  Defendant Megan Wargo, and any other PCTA or Forest

8  Serviced employee yet to be named as a defendant, who knew of, drafted, and/or

9  approved the discriminatory restrictions placed on who could participate in the trail

10  maintenance project at issue, or who supervised the project, were acting in the

11  performance of their official duties and were acting under color of federal law and

12  therefore a *Bivens* type cause of action against them is proper.

13  66.    The tests employed for determining whether a private party acts under color

14  of federal law include "The public function test" which looks to see if a private

15  party is performing a function traditionally the exclusive prerogative of the federal

16  government, "The Nexus test" which looks to see if there is a sufficiently close

17  nexus between the government and the challenged action of the private party that

18  the action of the private party is fairly treated as that of the government itself, and

19  "The Symbiotic Relationship test" where a private party is found to be a

20  government actor when the government has so far insinuated itself into a position

21  of interdependence with the private party that the government must be recognized

22  as a joint participant in the challenged activity.

23  67.    The close and direct relationship between the PCTA and the US Forest

24  Service, as described in Paragraph 21 above and as described in much more detail

25  in the MOU attached as Exhibit 1 meets several, if not all, of these tests.  An

1   examination of the MOU revels the extent of the interdependence between the

2   Forest Service and the PCTA.  The Forest Service is responsible for maintaining

3   the PCT pursuant to the Trails Act.  However, the Forest Service does not have

4   enough trail crews to maintain the PCT.  The PCTA, through the MOU, has

5   stepped into the shoes of the Forest Service to take over the government function

6   of maintaining the PCT.  Without the PCTA the Forest Service would have to

7   completely reinvent its approach to managing and maintaining the PCT because it

8   has delegated most of its responsibilities to the PCTA.  Additionally, the PCTA

9   would have no authority to have its volunteers do trail maintenance on the PCT

10  without the authority granted to it by the Forest Service through the MOU, as

11  private parties are not allowed to work on the PCT without some grant of authority

12  and permission such as is found in the MOU.  The PCTA would have little to no

13  reason to exist without its close and integral relationship with the Forest Service,

14  from whom it gets a substantial amount of its funding.

15  68.    Defendant Megan Wargo, is the acting Chief Executive Officer of the PCTA

16  and knew or should have known that the discriminatory action taken by the PCTA

17  was a violation of Plaintiff's constitutional rights and created a substantial risk of

18  harm to Plaintiff.  Plaintiff disregarded that risk to Plaintiff by failing to take

19  adequate action to prevent the wrongful conduct even though Plaintiff made

20  Defendant Wargo aware of the discriminatory conduct weeks in advance of the trail

21  maintenance project at issue and could have easily corrected the wrongful conduct.

22  As CEO of the PCTA, she is charged with knowing that discriminating against a

23  volunteer on the basis of gender identity and sexual orientation is a violation of the

24  law and the Constitution.  The Appendix to the PCTA's own Code of Conduct

25  provides that according to the law, protected status includes race, color, religion,

26  sex (including gender identity), and sexual orientation.  As CEO, Defendant Wargo

1   is charged with knowing that because the PCTA receives substantial funding from
2   the USDA it is subject to Departmental Regulation DR 4330-002 whose stated
3   purpose is to ensure that all programs and activities receiving federal financial
4   assistance from the USDA are in compliance with applicable civil rights laws,
5   including the prohibition against discrimination in those programs and activities.
6   Additionally, as CEO of an entity that receives substantial funding from the federal
7   government, she is charged with knowing that the President has issued executive
8   orders and the Secretary of the USDA has issued Civil Rights Policy Statements
9   that convey the message that discrimination based on gender identity and sexual
10  orientation will not be tolerated.  Additionally, Defendant Wargo was warned by
11  Plaintiff almost one month before the project at issue took place that the
12  discriminatory restrictions were a violation of his constitutional rights.  Defendant
13  Wargo could have cancelled the registrations for the project and started over
14  without any discriminatory restrictions as to who could register.  Instead,
15  Defendant Wargo chose to go ahead and violate Plaintiff's constitutional rights, as
16  well as the constitutional rights of who knows how many other people who wanted
17  to sign up for this project but were turned away because of the discriminatory
18  language in the description which certainly has a chilling effect on those persons
19  who did not meet the criteria.

20  69.    The present case lacks any factors that courts sometimes put forth as reasons
21  to hesitate in finding a cause of action under *Bivens*.  This case is not concerned
22  with fiscal policy, the military, the police, or national security, and without this
23  remedy under *Bivens*,  Plaintiff is without a remedy against the Defendants in this
24  cause of action and the Defendants could violate the law again and again, without
25  repercussions.

70.     As a result of Defendant Megan Wargo's unconstitutional denial of Plaintiff's right of equal protection under the law, Plaintiff was harmed by denying him the opportunity to participate in one of his favorite activities, i.e., helping to maintain the PCT.  It is crucial to recognize the profound impact that such exclusionary behavior has had on Plaintiff.  Plaintiff has dedicated a significant part of the last 15 years of his life to helping maintain the PCT and believed that the PCTA was an organization that allowed every individual to participate and contribute without prejudice or discrimination.

## COUNT III

### Denial of Due Process

### U.S. Constitution Fifth Amendment

### (Against Defendant Jody Holzworth in her individual capacity and possibly other individual defendants, current and former employees of the PCTA and the Forest Service, who may be identified through discovery or otherwise)

71.     Plaintiff incorporates Paragraphs 1 through 70 as though fully set forth herein.  Plaintiff specifically incorporates Paragraphs 35 through 44 for the explanation of Plaintiff's filing of a Discrimination Complaint with the USDA and the USDA's determination that the jurisdiction for reviewing the Discrimination Complaint was with the US Forest Service and not the USDA itself.

72.     Plaintiff states this cause of action against Defendant Jody Holzworth, in her individual capacity, and possibly others, for purposes of seeking compensatory and punitive damages.

73.     This cause of action is based on a violation of Plaintiff's constitutional right of due process under the Fifth Amendment to the US Constitution and is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

1   *Narcotics, 403 U.S. 338 (1971).*  In *Bivens* the US Supreme Court held that a

2   federal officer acting under color of federal law may be liable for damages for

3   violating the constitutional rights of another.  *Bivens*, 403 U.S. 397.

4   74.    Defendant Holzworth was assigned the duty of reviewing the allegation of

5   discrimination made by Plaintiff.   Defendant Holzworth, a deputy Regional

6   Forester of the US Forest Service, is a federal officer and was acting in the

7   performance of her official duties and under color of federal law when she

8   undertook to review the allegation of discrimination and issue her "Determination

9   Letter" which is attached as Exhibit 15.

10   75.    Based on a conversation with a Forest Service employee, Plaintiff believes

11   that Defendant Jody Holzworth's duties include civil rights matters.  This is why

12   she was assigned the duty of reviewing Plaintiff's discrimination claim.  Defendant

13   Holzworth knew or should have known that Plaintiff was entitled to have his

14   allegation of discrimination reviewed in a just, fair, unbiased, and professional

15   manner in keeping with the concepts of due process.  Instead, what occurred was

16   an unjust, unfair, completely biased, and totally unprofessional review and

17   conclusion that did not meet even the most basic principles of due process and

18   violated Plaintiff's Fifth Amendment rights to due process.

19   76.    The only reason that Defendant Holzworth's "Determination Letter" found

20   that no discrimination had taken place against Plaintiff was because it was based

21   on a complete lack of due process, an incomplete and one-sided, if not malicious,

22   "investigation" as to the actual facts.  Most of the findings of "fact" are

23   demonstrably false and untrue with at least one total fabrication of facts that

24   constituted misconduct on the part of Defendant Holzworth.  Plaintiff specifically

1   incorporates and refers to Paragraphs 45 through 52 to explain the background

2   facts of this Paragraph 76.

3   77.   Defendant Holzworth uses her misstatement of fact that the trail

4   maintenance project was full when Plaintiff first logged onto the PCTA website, to

5   set the stage to misdirect the analysis into a review of how the PCTA's automated

6   sign-up system works and conclude that Plaintiff was not discriminated against

7   because the reason for Plaintiff not being able to participate was because the

8   project was full and not because he was discriminated against.

9   78.   As a result of Defendant Holzworth's failure to conduct a just, fair, unbiased,

10  and professional investigation and to base her findings on the actual facts,

11  Defendant Holzworth intentionally violated Plaintiff's right to due process.

12  79.   The present case lacks any factors that courts sometimes put forth as reasons

13  to hesitate in finding a cause of action under Bivens.  This case is not concerned

14  with fiscal policy, the military, the police, or national security, and without this

15  remedy under *Bivens*,  Plaintiff is without a remedy against the Defendants in this

16  cause of action and the Defendants could violate the law again and again, without

17  repercussions.

18  80.   Solely as a result of Defendant Holzworth's unconstitutional denial of

19  Plaintiff's right to due process, Plaintiff was harmed by denying Plaintiff the

20  opportunity to show that the PCTA and the US Forest Service discriminated against

21  Plaintiff and eliminated Plaintiff's right to be heard, to present the true facts, and to

22  be vindicated.  The psychological repercussions of this denial of due process are

23  far reaching and has left Plaintiff with a deep sense of injustice and has eroded his

24  trust in the fairness of systems and institutions that should work to ensure due

25  process in all cases and circumstances.

1                      **REQUEST FOR RELIEF**

2    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his

3    favor and against Defendants on all claims, as follows:

4    A.    <u>As to Count I:</u>

5          1.     Enter a declaratory judgment that Defendants PCTA and US Forest

6    Service violated Plaintiff's rights under the Equal Protection Clause of the

7    Fourteenth Amendment to the U.S. Constitution when they excluded Plaintiff from

8    participating in the trail maintenance project because of his gender identity and

9    sexual orientation.

10         2.     Issue permanent injunctive relief enjoining all Defendants in Count I

11   from restricting or discouraging anyone from participating in trail maintenance

12   projects on the PCT because of their sex, gender identity, or sexual orientation.

13         3.     The declaratory and injunctive relief requested in this action is sought

14   against each Defendant and their successors; against each Defendant's officers,

15   directors, employees, and agents; and against all persons acting in active concert or

16   participation with any Defendant, or under any Defendant's supervision, direction,

17   or control.

18   B.    <u>As to Count II:</u>

19         1.     Award Plaintiff compensatory damages against Defendant Megan

20   Wargo (and each additional person who may be named a Defendant under Count

21   II) in the amount of $250 for violation of Plaintiff's rights to equal protection of

22   the law under the Fourteenth Amendment to the U.S. Constitution.

23         2.     Award Plaintiff punitive damages against Defendant Megan Wargo

24   (and each additional person who may be named a Defendant under Count II) in the

1   amount of $4,000 for violation of Plaintiff's rights to equal protection of the law

2   under the Fourteenth Amendment to the U.S. Constitution.  Punitive damages are

3   justified because of Defendant Wargo's particularly egregious behavior.  Plaintiff

4   Wargo knew or should have known that the restriction of who could participate in

5   the trail maintenance project was discriminatory, and she was notified of such well

6   prior to the date of the project, yet she chose to allow the discrimination to take

7   place.

8   C.   <u>As to Count III:</u>

9        1.   Award Plaintiff compensatory damages against Defendant Jody

10  Holzworth (and each additional person who may be named a Defendant under

11  Count III) in the amount of $250 for violation of Plaintiff's rights to due process

12  under the Fifth Amendment to the U.S. Constitution.

13       2.   Award Plaintiff punitive damages against Defendant Jody Holzworth

14  (and each additional person who may be named a Defendant under Count III) in

15  the amount of $4,000 for violation of Plaintiff's rights to due process under the

16  Fifth Amendment to the U.S. Constitution.  Punitive damages are justified because

17  of Defendant Holzworth's particularly egregious behavior.  Defendant Holzworth

18  is a very high ranking official of the US Forest Service.  As a Deputy Regional

19  Forester, she conducted an "investigation" without speaking to Plaintiff or

20  requesting any information from Plaintiff, relied on findings that she knew or

21  would have known were false and would have been proven so if a proper

22  investigation had been conducted, and fabricated a false statement concerning the

23  language contained in a Forest Service form.  These actions constituted a willful

24  and malicious disregard for Plaintiff's constitutional rights.

1   D.     Award Attorneys' fees and costs incurred by Plaintiff to the extent permitted

2   by law, including under the Equal Access to Justice Act, 28 U.S.C. Section

3   2412(d)(1).

4   E.     An order granting such other and further relief as may be just and

5   appropriate upon the facts and law at issue herein.

6

7

8                               Dated:  June 12, 2023

9

10                              By:    Jim L. Banks

11                              Pro Se Plaintiff

**EXHIBIT 1**

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

## MEMORANDUM OF UNDERSTANDING
### between the
### USDA FOREST SERVICE,
### NATIONAL PARK SERVICE, BUREAU OF LAND MANAGEMENT
### CALIFORNIA AND OREGON/WASHINGTON STATE OFFICES,
### CALIFORNIA STATE PARKS
### and the
### PACIFIC CREST TRAIL ASSOCIATION

This Memorandum of Understanding (MOU) is made and entered into by and between the Pacific Crest Trail Association, hereinafter referred to as the PCTA and the USDA Forest Service (Regions 4, 5, and 6), the USDI, National Park Service (Pacific West Region), Bureau of Land Management (State Offices of California, Oregon/Washington), and the California State Parks, hereinafter referred to as the GOVERNMENT.

**I. PURPOSE:** The purpose of this MOU is to document the cooperation between the parties in accordance with the following provisions.

To facilitate the improvement, management and operation of the Pacific Crest National Scenic Trail (PCNST) as a single long-distance trail, consistent with the PCNST Comprehensive Management Plan and GOVERNMENT Land, Resource, and Visitor Use Management Plans.

To facilitate the coordination, development and distribution of informational, educational and interpretive material related to the PCNST.

To encourage and manage volunteer involvement in the management, operation and protection of the PCNST.

To recognize the PCTA as the major partner in the planning, development, management, operation, and protection of the PCNST.

To document the agreement to coordinate in the planning, development, management, operation and protection of the PCNST.

## II. STATEMENT OF MUTUAL INTEREST AND BENEFIT

Whereas, it is mutually beneficial to provide for the comprehensive development, management, planning and coordination of the managing and operating activities that occur on the PCNST. Furthermore, it is mutually beneficial to develop, maintain and encourage trail use and enjoyment and encourage volunteer involvement in supporting the PCNST throughout its 2,650 miles linking Federal, State, and private lands from Mexico to Canada; including National Forests, National Parks, Tribal Lands, Bureau of Land Management lands and California State Parks. Continuous efforts are underway to locate and construct the trail in the most desirable location, consistent with the PCNST Comprehensive Plan, and

Exhibit 1
Page 1

Page 1 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number:  BLM-OR-932-1410

Whereas, the GOVERNMENT is dedicated to responsible management of the Nation's natural resources, including the PCNST, through the involvement of concerned citizen groups, and

Whereas, the PCTA is a 501(c) (3) nonprofit corporation with a mission to protect, preserve and promote the Pacific Crest National Scenic Trail as a world-class experience for hikers and equestrians, and for all the values provided by wild and scenic lands, and

Whereas the PCTA has been established to provide information, coordinate volunteer work, serve as a communications link among users and land management agencies, and assist partner agencies in the maintenance, restoration and protection of the PCNST, and

Whereas, the parties recognize that it is critical for employees and volunteers to ensure safe working conditions and operations, operate chain saw and crosscut saws safely and comply with GOVERNMENT training requirements.

## III. THE PACIFIC CREST TRAIL ASSOCIATION SHALL

A. Coordinate with the GOVERNMENT in developing, publishing and distributing informational, educational and interpretive materials related to the PCNST. The PCTA will publish a magazine encouraging the use, enjoyment,  protection, and improvement of the PCNST. The PCTA will develop and maintain a dedicated website, respond to informational requests via  phone, fax, internet or walk-ins and disseminate publications encouraging volunteer involvement  in PCNST projects and programs. The PCTA will update its own PCNST maps,  brochures, and information.

B. Coordinate with the GOVERNMENT in the implementation of trail handbook standards on all PCNST projects conducted by PCTA or volunteers cooperating with  the PCTA across lands administered by the respective GOVERNMENT agencies.

C. Take the lead in developing a volunteer recruitment and donation program for the  purpose of providing assistance to the GOVERNMENT in the management and  operation of the PCNST.

D. Assist  the  GOVERNMENT  in  developing  trail  management  strategies including  identifying  the  optimum  trail  location  reviews,  construction, reconstruction, and  maintenance plans for the PCNST.

E. Designate a representative to meet and coordinate MOU activities with the  GOVERNMENT representative.

F. Coordinate with and assist the GOVERNMENT with the issuance of Permits for locations where the PCNST passes through an area that has limited entry quota. Minimum trip length distances and specific permit requirements will be coordinated with GOVERNMENT representatives.

G. Encourage its members and volunteers to work with local GOVERNMENT officials  to discuss and identify opportunities for cooperative work on mutually beneficial  projects or activities, when appropriate.

Exhibit 1
Page 2

Page 2 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

## IV. THE GOVERNMENT SHALL

A.  Provide technical assistance to the PCTA in developing and executing construction, reconstruction, and maintenance projects.

B.  Provide technical assistance to the PCTA in developing, publishing and distributing informational, educational, and interpretive materials related to the PCNST. The GOVERNMENT will provide articles for publication in the PCTA magazine.

C.  Provide opportunities for the PCTA to comment on future GOVERNMENT publications concerning the PCNST prior to publication.

D.  Advise the PCTA on the implementation of GOVERNMENT trail design, construction and maintenance, safety and accessibility handbook standards and expected results on the PCNST projects conducted by PCTA volunteers.

E.  Cooperate with the PCTA in the development of volunteer programs including recruitment and training of volunteers. Coordinate GOVERNMENT volunteer programs and training with the PCTA to provide instruction and guidance for volunteers working on the PCNST.

F.  Coordinate with the PCTA for the development, publication, and interpretation of appropriate PCNST related information, management, operation, and protection.

G.  Designate a GOVERNMENT PCNST trail manager for the trail who will provide coordination with the PCTA designated representative on PCNST matters.

H.  Provide leadership in the development of instruction guides for trail signing, maintenance activities, construction and reconstruction activities.

I.  Use the GOVERNMENT Volunteer Agreement (OF301A Volunteer Service Agreement--Natural & Cultural Resources) to allow PCTA volunteer's participation on projects occurring on the PCNST. PCTA-sponsored volunteers will be considered participants authorized by the Volunteers in National Forests Act of 1972 (VIF) --16 U.S. Code § 558, Volunteers in National Parks (VIP) P.L. 91-357 of 1970, or Bureau of Land Management (BLM) volunteer program (P.L. 98-540 of 1984), depending on where the volunteer work occurs.

1.  If the PCTA volunteer work occurs on National Forest System lands, or lands and/or easements acquired for the PCT and assigned to the Forest Service, the PCTA and the Forest Service local unit will work together to bring the volunteer on under the Forest Service Volunteer Program

2.  If the PCTA volunteer work occurs on National Park lands, or lands and/or easements acquired for the PCT and assigned to the National Park Service, the volunteer will be working under the VIP program and will be considered a National Park Service volunteer.

3.  If the PCTA volunteer work occurs on Bureau of Land Management lands, or lands and/or easements acquired for the PCT and assigned to the Bureau of Land Management, the volunteer will be working under the Bureau of Land Management volunteer program and will be considered a BLM volunteer.

4.  If the PCTA volunteer work occurs on California State Park lands (which are typically under easement), the volunteer will be working under the federal volunteer program where the easement is assigned. PCTA will

Exhibit 1
Page 3                                    Page 3 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

also coordinate all activities with California State Parks to ensure park resource and safety concerns are addressed.

     5. PCTA volunteer work activities in support of the PCT program not covered in situations A-E above will be considered National Forest volunteer work under the VIF program.

J. Provide PCTA with notice to make timely comments on GOVERNMENT actions that may affect the PCNST.

K. Provide PCTA with known appropriate information about private landowner's proposed actions that may affect the PCNST.

L. Authorize the PCTA to use the PCNST servicemark (logo) on publications (both printed and electronic), letterhead, and other materials related to the PCNST where the use contributes to purposes of education and conservation of the PCNST. Additionally the PCTA may use the PCNST servicemark to recognize volunteers, on fundraising materials and merchandise and in materials used for advocacy work.

M. Use the GOVERNMENT funding processes as available and appropriate by execution of separate funding transactions to assist the PCTA with costs of activities pursuant to this MOU.

## V. IT IS MUTUALLY AGREED AND UNDERSTOOD BY AND BETWEEN SAID PARTIES THAT:

A. Coordinate in the management and operation of the PCNST and feeder trails including, but not limited to, signing, condition surveys, trailhead and trail use surveys, water development, construction and maintenance activities.

B. Jointly plan and conduct an annual PCNST management meeting with the objective of coordinating management of the PCNST in accordance with the PCNST Comprehensive Management Plan and GOVERNMENT Land, Resource, and Visitor Use Management Plans.

C. At least annually, conduct a meeting to discuss outreach and potential avenues to share resources, coordinate work projects, seek funding opportunities, and other items of mutual concern.

D. Review matters covered by this MOU at one of the annual meetings. It is the intent of the parties to arrange for continuing consultation to reach prompt agreement on matters covered by this MOU. The GOVERNMENT PCNST manager shall be responsible for arranging consultation meetings. The Executive Director from PCTA shall be included in setting meeting agendas. Future goals may be established by mutual consent.

E. Agree that two-way communication and consultation is essential to the success of this partnership and that actions by either party which affects items of mutual interest will follow this principle. The local representative for the GOVERNMENT will be the

Exhibit 1
Page 4                                                                    Page 4 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number:  BLM-OR-932-1410

Forest Supervisors for National Forests, Superintendents for National Parks, District
Managers for the Bureau of Land Management and Superintendents for California
State  Parks, or their designated representative.  The PCTA contact person will be the
Executive Director and CEO.

F.  Agree that compliance with safety procedures and protocols is paramount.  Chain
saw  and crosscut operations involving PCTA staff and volunteers will be complied
with as  outlined in Exhibit A.

G.  NOTICES.  Any communications affecting the operations covered by this agreement
given by the GOVERNMENT or PCTA is sufficient only if in writing and delivered
in person, mailed, or transmitted electronically by e-mail or fax, as follows:

To the GOVERNMENT PRINCIPLE CONTACTS, at the address specified in the
MOU.

To PCTA, at Address shown in the MOU or such other address designated within the
MOU.

H.  PARTICIPATION IN SIMILAR ACTIVITIES. This instrument in no way restricts
the  GOVERNMENT Agencies from participating in similar activities with other
public or  private agencies, organizations, and individuals.

I.  ENDORSEMENT.  Any of PCTA's contributions made under this MOU do not by
direct  reference or implication convey THE GOVERNMENTS endorsement of
PCTA's products or activities.

J.  NONBINDING AGREEMENT.  This MOU creates no right, benefit, or trust
responsibility, substantive or procedural, enforceable by law or equity.  The parties
shall  manage their respective resources and activities in a separate, coordinated and
mutually  beneficial manner to meet the purpose(s) of this MOU.  Nothing in this MOU
authorizes  any of the parties to obligate or transfer anything of value.

Specific, prospective projects or activities that involve the transfer of funds, services,
property, and/or anything of value to a party requires the execution of separate
agreements and are contingent upon numerous factors, including, as applicable, but not
limited to:  agency availability of appropriated funds and other resources; cooperator
availability of funds and other resources; agency and cooperator administrative and
legal  requirements (including agency authorization by statute); etc.  This MOU neither
provides, nor meets these criteria.  If the parties elect to enter into an obligation
agreement that involves the transfer of funds, services, property, and/or anything of
value  to a party, then the applicable criteria must be met. Additionally, under a
prospective  agreement, each party operates under its own laws, regulations, and/or
policies, and any  Forest Service obligation is subject to the availability of appropriated
funds and other  resources.  The negotiation, execution, and administration of these
prospective  agreements must comply with all applicable laws.  Nothing in this MOU
is intended to  alter, limit, or expand the agencies' statutory and regulatory authority.

Exhibit 1
Page 5                                                                     Page 5 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

K. RECORDS MANAGEMENT. The GOVERNMENT owns the rights to information collected as a result of the Volunteer Agreement(s) authorized in this MOU. All records (paper and electronic) created or produced in part of in whole are to be maintained for three years and made available upon request Additionally the number of volunteer hours and trail maintenance/construction accomplishments are to be reported by agency/unit annually.

L. USE OF U.S. FOREST SERVICE INSIGNIA. In order for PCTA to use the U.S. Forest Service insignia on any published media, such as a Web page, printed publication, or audiovisual production, permission must be granted from the U.S. Forest Service's Office of Communications. A written request must be submitted and approval granted in writing by the Office of Communications (Washington Office) prior to use of the insignia.

M. MEMBERS OF U.S. CONGRESS. Pursuant to 41 U.S.C. 22, no U.S. member of, or U.S. delegate to, Congress shall be admitted to any share or part of this agreement, or benefits that may arise therefrom, either directly or indirectly.

N. FREEDOM OF INFORMATION ACT (FOIA). Public access to MOU or agreement records must not be limited, except when such records must be kept confidential and would have been exempted from disclosure pursuant to Freedom of Information regulations (5 U.S.C. 552).

O. TEXT MESSAGING WHILE DRIVING. In accordance with Executive Order (EO) 13513, "Federal Leadership on Reducing Text Messaging While Driving," any and all text messaging by Federal employees is banned: a) while driving a Government owned vehicle (GOV) or driving a privately owned vehicle (POV) while on official Government business; or b) using any electronic equipment supplied by the Government when driving any vehicle at any time. All cooperators, their employees, volunteers, and contractors are encouraged to adopt and enforce policies that ban text messaging when driving company owned, leased or rented vehicles, POVs or GOVs when driving while on official Government business or when performing any work for or on behalf of the Government.

P. COMMENCEMENT/EXPIRATION/TERMINATION. This MOU takes effect upon the signature of all participants and shall remain in effect for ten years from the date of execution. This MOU may be extended or amended upon written request of any party and the subsequent written concurrence of the other(s). Any party may terminate this MOU with a 60-day written notice to the other(s).

Q. TERMINATION. Any of the parties, in writing, may terminate this MOU in whole, or in part, at any time before the date of expiration.

R. DEBARMENT AND SUSPENSION. PCTA shall immediately inform the GOVERNMENT if they or any of their principals are presently excluded, debarred, or suspended from entering into covered transactions with the federal government according to the terms of 2 CFR Part 180. Additionally, should PCTA or any of their

Exhibit 1
Page 6
Page 6 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

principals receive a transmittal letter or other official Federal notice of debarment or
suspension, then they shall notify the GOVERNMENT without undue delay. This
applies whether the exclusion, debarment, or suspension is voluntary or involuntary.

S. <u>MODIFICATIONS</u>. Modifications within the scope of this MOU must be made by mutual
consent of the parties, by the issuance of a written modification signed and dated by all
properly authorized, signatory officials, prior to any changes being performed. Requests
for modification should be made, in writing, at least 30 days prior to implementation of
the requested change.

T. <u>COMMENCEMENT/EXPIRATION DATE</u>. This MOU is executed as of the date of the
last signature and is effective for ten years at which time it will expire, unless extended
by an executed modification, signed and dated by all properly authorized, signatory
officials.

U. <u>AUTHORIZED REPRESENTATIVES</u>. By signature below, each party certifies that the
individuals listed in this document as representatives of the individual parties are
authorized to act in their respective areas for matters related to this MOU. In witness
whereof, the parties hereto have executed this MOU as of the last date written below.

V. <u>RESPONSIBILITIES OF PARTIES</u>. All parties will handle their own activities and
utilize their own resources, including the expenditure of their own funds, in pursuing
these objectives. Each party will carry out its separate activities in a coordinated and
mutually beneficial manner.

W. . <u>PRINCIPAL CONTACTS</u>. The principal contacts for this instrument are:

*PCTA Project Contact*
Liz Bergeron
Executive Director and CEO
Pacific Crest Trail Association
1331 Garden Highway
Sacramento, CA 95833
Phone: 916 285 1846
FAX: 916 285 1865
E-Mail: lbergeron@pcta.org

*Forest Service Project Contact*
Beth Boyst
Pacific Crest Trail Program Manager
United States Forest Service
1323 Club Drive
Vallejo, CA 94592
Phone: 707-562-8881
FAX: 707-562-9055
E-Mail: bboyst@fs.fed.us

Exhibit 1
Page 7

Page 7 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

*CA Bureau of Land Management*
*Project Contact*
Mark Conley
NLCS Program Manager
California State Office
2800 Cottage Way, Suite W-1623
Sacramento, CA 95825

Phone: 916-978-4641
FAX: (916) 978-4657
E-Mail: Mark_Conley@blm.gov

*OR/WA Bureau of Land Management*
*Project Contact*
Christopher Knauf
Outdoor Recreation Planner (Travel
Management)
Oregon State Office
1220 S.W. 3rd Avenue
Portland, OR 97204
Phone: (503)808-6427
FAX: (503)808-6021
E-Mail: cknauf@blm.gov

*CA State Parks Project Contact*
Alexandra J. Stehl
Interim Statewide Trails Manager
CA State Parks
1416 9th Street, Room 1442-7
Sacramento, CA 95814
Phone: (916) 651-8713
FAX: 916-653-4458
E-Mail: astehl@parks.ca.gov

*National Park Service Project Contact*
Steve Gibbons
Acting Park Superintendent
Lassen Volcanic National Park
PO Box 100
Mineral, CA 96063
Phone: 530-595-6101
FAX: 530-595-3262
E-Mail: Steve_Gibbons@nps.gov

X. NON-FUND OBLIGATING DOCUMENT. Nothing in this MOU shall obligate participating entities to obligate or transfer any funds. Specific work projects or activities that involve the transfer of funds, services, or property among the various agencies and offices of the GOVERNMENT and other entities will require execution of separate agreements and be contingent upon the availability of appropriated funds. Such activities must be independently authorized by appropriate statutory authority. This MOU does not provide such authority. Negotiation, execution, and administration of each such agreement must comply with all applicable statutes and regulations.

Y. ESTABLISHMENT OF RESPONSIBILITY. This MOU is not intended to, and does not create, any right, benefit, or trust responsibility, substantive or procedural, enforceable at law or equity, by a party against the United States, its agencies, its officers, or any person.

Z. This document supersedes the earlier MOU between PCTA and the GOVERNMENT (09-MU-11052008-213) executed on 11/30/2009.

Exhibit 1
Page 8

Page 8 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number:  BLM-OR-932-1410

THE PARTIES HERETO have executed this instrument.

## Pacific Crest Trail Association

Liz Bergeron                    12/16/2014

Liz Bergeron
PCTA Executive Director and CEO            Date

## California Department of Parks and Recreation

Lisa Mangat                     4/24/15

Lisa Mangat
Acting Director                 Date

## USDA Forest Service

Intermountain Region

Nora B. Rasure                  5/12/2015
Regional Forester               Date

Pacific Southwest Region

Randy Moore                     1/7/15
Regional Forester               Date

Pacific Northwest Region

Jim Pena                        1/29/2015
Regional Forester               Date

Exhibit 1
Page 9                          Page 9 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number:  BLM-OR-932-1410

**US Department of Interior, National Park Service**

Pacific West Region

Christine S. Lehnertz
Regional Director                    Date 5/1/15

**US Department of Interior, Bureau of Land Management**

Oregon and Washington

Jerome E. Perez      Feb. 6, 2015
State Director                         Date

California

James G. Kenna      2/24/2015
State Director                         Date

Exhibit 1
Page 10                                    Page 10 of 14

FS agreement number: 15-MU-11132424-003
Cooperator agreement number: BLM-OR-932-1410

Forest Service Technical Review Signatures

The authority and format of this instrument has been reviewed and approved for signature
by:

_____     12/09/14

Vigdis Jacobsen
WO, Grants Management Specialist          Date

Exhibit 1
Page 11                                    Page 11 of 14

**EXHIBIT 2**

Case 8:23-cv-01026-MWF-SSC   Document 1   Filed 06/12/23   Page 44 of 98   Page ID #:44

Project Schedule (/volunteer/s/project-schedule)          Become a Volunteer (/volunteer/s/vol...

# Trailwork Project
## LGBTQIA+ Affinity Trail Crew - Car Camp at Harts Pass

**Record Type**
Trail Maintenance

**Project Dates**
9/8/2022 - 9/11/2022

**Volunteer Group Name**
Pacific Crest Trail Association

Join the waitlist

## ⌄ Project Overview

**Project Title**
LGBTQIA+ Affinity Trail Crew - Car Camp at Harts Pass

**Project Leader Info**
Pcta Staff mdecramer@pcta.org (mailto:mdecramer@pcta.org)

**Agency/Land Manager Name●**
Okanogan-Wenatchee National Forest: Methow Valley RD

**Maximum Number of Volunteers**
10

**Project Description●**
Are you looking for an opportunity to camp high in the mountains, meet new people, and help maintain a national scenic trail?
The Pacific Crest Trail Association invites you to join a late summer trail maintenance project in the North Cascades.
This four-day project will be led by PCTA staff and will take place near stunning Harts Pass. The crew will car camp at a Forest
Service campground and spend each day working either north or south on the PCT. Projects will include rebuilding drainage
features, removing small rockslides, and clearing the trail corridor. No previous trail experience is required.
This is an affinity project for LGBTQIA2S+ identified volunteers. Queer and non-binary PCTA staff members will be leading this
project. The crew leaders will focus on assuring a safe project where volunteers can learn new skills or put their previous trail
experiences to use. PCTA invites individuals with gender or sexual identities that have been underrepresented in the national
scenic trail community to sign up for this crew. We hope that you will bring your full self to this project and help co-create an
outstanding volunteer experience.

Additional notes:
Simple but tasty meals will be provided by PCTA starting with dinner on the first evening of the project.
Harts Pass is a remote, backcountry location. To reach the project, volunteers will need to drive several hours from most areas of
Washington and travel along a gravel Forest Service road. Carpooling from western Washington with other volunteers or PCTA
staff may be available.
This project is for people who identify as Lesbian, Gay, Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit and other
queer identities. People with these identities encounter oppression based on their gender and sexuality in contemporary society.
This project will be a fun weekend in the mountains where volunteers will be free to be themselves and can learn from each other.
If you are straight and cisgender please respect that this trail maintenance event is not for you.
There are many other projects available on PCTA's project schedule (https://connect.pcta.org/volunteer/s/project-schedule
(https://connect.pcta.org/volunteer/s/project-schedule)).
Questions about this project or affinity spaces at PCTA can be directed to North Cascades Regional Representative, Michael
DeCramer (mdecramer@pcta.org (mailto:mdecramer@pcta.org)).

**EXHIBIT 3**

## Pacific Crest Trail Association
## Volunteer Code of Conduct

The Pacific Crest Trail Association (PCTA) and its network of partners work cooperatively to protect, promote, and preserve the Pacific Crest National Scenic Trail (PCT). As a network, we recognize that greater strength and resilience for the PCT is gained through the practice of building and being an inclusive culture. Because roles of volunteers may overlap between groups, organizations and agencies, we all hold a stake in what it means to share a culture of care. The PCTA's Volunteer Code of Conduct promotes a shared culture of care which provides an environment that is safe, inclusive, just, fair and consistent, and sets an expectation for respectful behavior among all volunteers and a shared responsibility for each other's wellbeing.

The Code of Conduct guides behavior on and off the trail and inspires a shared responsibility not just to the land but also to each other. **The Code is based on the following values:**

- **Safety is our highest priority and our shared responsibility**
- **We support each other and work together to maintain a positive and welcoming community; this collaboration is a source of strength**
- **Operating in a respectful and ethical manner is an essential component of how we conduct our work, lead volunteer activities and use shared resources**

The Code applies to interactions that occur across the PCTA's operations, including in offices, on trips, at events, programs and trainings, in meetings, on the trail, at social events, in written communication, including online and social media, and at all other events, activities and places when we are ambassadors for the PCT. Therefore, this Code applies to every arena where PCTA and its network of partners operate, and includes all PCTA volunteers, PCTA employees and anyone who partners or interacts with the PCTA by joining us in the Code.

## Standards of Conduct

The goal of a standard of conduct is to educate, inspire, and empower those we interact with, and to further expand civic engagement for the PCT. In every situation, those in the PCT network are expected to conduct themselves in a manner consistent with the following standards. Safety is a high priority focus of PCTA partners, both physical and emotional. To that end, PCTA partners and individuals within them commit to inclusive and equitable practices in action, word and deeds.

**All individuals have the right to:**

- Be treated with respect
- Participate in an environment free of harassment, discrimination, or hostile conditions
- Receive a suitable assignment
- Receive training and necessary support
- Have qualified supervision
- Have safe working conditions
- Have their time used effectively

**All individuals have the responsibility to:**

- Make safety the highest priority
- Act in a considerate and respectful manner
- Follow trail and association policies and guidelines
- Participate in and learn from training sessions and meetings

Pacific Crest Trail Association
Volunteer Code of Conduct

Exhibit 3
Page 1

Page 1 of 5
v March 2022

**Pacific Crest Trail Association**
## Volunteer Code of Conduct

- Perform high quality work
- Care for trail resources
- Seek and accept guidance and support

**All individuals will:**

- Welcome all people and actively seek new stewards, supporters, and constituents
- Uphold a community built on respect, encouragement, and opportunity for all, where issues are addressed in a calm and considerate manner
- Conduct and participate in activities with safety as the highest priority, while minimizing risk and impacts
- Respect natural resources and the ways that people connect with one another and the outdoors
- Avoid conflicts of interest
- Stay informed of the association and land manager(s) policies and regulations, including guidelines and recommendations
- Represent the PCTA and its partners in a respectful manner

Staff, volunteers, or others in the PCT network will not comport themselves in a manner detrimental to others within the network, including federal and state management partners, the PCTA, its members, the public or volunteers.

### Misconduct

Misconduct describes actions in violation of the Code's Standard of Conduct. Actions that may be detrimental to the PCT network, the public, and natural resources or are in violation of the network's shared values are considered misconduct.

The following is not an exhaustive list, but provides examples of misconduct:

- Unwelcome, discriminatory, or exclusionary behavior toward others of any kind based on identities including, but not limited to, race, ethnicity, gender identity, gender expression, sexual orientation, physical ability, mental ability, neuro(a)typicality, physical characteristic, socioeconomic background, nationality, age, religion, or beliefs. This includes but is not limited to unsolicited judgments on a person's lifestyle choices and practices: things like food, health, parenting, drugs, and employment
- Physical or sexual assault, including violence or threats of violence toward others
- Harassment that is sexual, psychological, and/or physical. Harassment may be verbal, physical, digital, deliberate, unsolicited, or unwelcome. This includes but is not limited to physical contact without consent and/or a refusal to honor request to stop
- Failure to prioritize, or willful disregard for, personal and group safety during participation in activities on PCT lands, whether through disregard for stated policies and rules or through negligence
- Disregard for Leave No Trace principles and/or for the rules and regulations of applicable local and federal governments
- Failure to interact with or represent PCTA and its network partners in a respectful manner
- Illegal or unethical activity while participating in PCTA network activities
- Misuse, misreporting, or embezzlement of PCTA related project funds or other assets

Pacific Crest Trail Association
Volunteer Code of Conduct

Exhibit 3
Page 2

Page 2 of 5
v March 2022

## Pacific Crest Trail Association
## Volunteer Code of Conduct

**Reporting misconduct:**

Volunteers are encouraged to discuss issues that arise with others in an open way to help lead to improved communication and stronger working relationships. If those efforts are unsuccessful, or if volunteers do not feel comfortable discussing issues with the person responsible, the steps outlined below offer available processes for reporting misconduct.

- For immediate threats to safety, dial 911 or on a trail maintenance project, follow the Trailhead Communications Plan
- Contact any PCTA staff member, including but not limited to:
  - Volunteer Programs Manager, (916) 285-1838, volunteer@pcta.org
  - Director of Trail Operations, (916) 285-1853, jtripp@pcta.org
  - Chief Financial and Administrative Officer, (916) 285-1848, traichart@pcta.org
- Contact Forest Service Pacific Crest National Scenic Trail Administrator:
  - (619) 372-1302, lindsey.steinwachs@usda.gov
- For suspicious activities or to report trail resource damage, use the Pacific Crest Trail Incident Report Form: https://www.fs.usda.gov/detail/pct/home/?cid=stelprdb5361615

In all cases of reporting, discretion is taken to protect the identity of the complainant and other alleged involved parties during the course of the investigation and any subsequent determination and resolution.

PCTA's Code does not preclude partners from holding their own code of conduct, nor is it intended to conflict with individual organizations' codes of conduct. It is intended to be additive. PCTA's Code is aligned with laws and policies as noted in the attached appendix. For the purpose of this document PCT network includes all PCTA groups and other entities who coordinate volunteers in support of the PCT.

PCTA volunteer opportunities are not guaranteed. Any volunteer may be disqualified from an opportunity at any time for misconduct, as outlined above.

**My signature signifies I agree to this Code and will abide by, adhere to, and honor all of the above.**

_____

Printed Name

_____          _____

Signature                                                                        Date

Exhibit 3
Page 3

Pacific Crest Trail Association
Volunteer Code of Conduct

Page 3 of 5
v March 2022

**Pacific Crest Trail Association**
## Volunteer Code of Conduct

<u>**Appendix**</u>

**Alignment with Laws and Policies**

PCT network partners believe in, uphold, and ethically value Federal Human Rights Laws. According to the law, protected status includes race, color, religion, sex (including pregnancy and gender identity), sexual orientation, national origin, age (any), disability, genetic information (including family medical history), status as a parent, marital status, or political affiliation. Under the law, protected activities include reporting harassing, discriminatory, or retaliatory conduct; filing a claim of harassment; supplying evidence in any investigation; or intervening to protect others who have suffered harassing misconduct, discrimination, or retaliation.

**PCTA Employee Guidebook: Prohibited Harassment**

PCTA prohibits any form of harassment of any of our employees, independent contractors, volunteers, donors, vendors, or suppliers. For purposes of this policy, harassment includes slurs, jokes or any other verbal, graphic or physical communication or conduct that is offensive. PCTA will not tolerate any form of harassment, including, but not limited to, harassment related to an individual's race, religion, color, gender, sexual orientation, registered domestic partner status, national origin, ancestry, citizenship status, age, uniform-service member status, marital status, pregnancy, childbirth or related medical conditions, other medical conditions, or physical or mental disability. Employees who violate this policy will be subject to disciplinary action, including termination.

Likewise, it is Pacific Crest Trail Association's policy to prohibit harassment of any employee by any supervisor, employee, volunteer, donor, vendor, or supplier on the basis of sex or gender. The purpose of this policy is not to regulate personal morality within the PCTA. It is to ensure that at the PCTA all employees are free from sexual harassment. While it is not easy to define precisely what types of conduct could constitute sexual harassment, examples of prohibited behavior include unwelcome sexual advances, requests for sexual favors, obscene gestures, displaying sexually graphic magazines, calendars or posters, sending sexually explicit e-mails and text messages, and other verbal or physical conduct of a sexual nature, such as uninvited touching of a sexual nature or sexually related comments. Depending upon the circumstances, improper conduct also can include sexual joking, vulgar or offensive conversation or jokes, commenting about an employee's physical appearance, conversation about your own or someone else's sex life, or teasing or other conduct directed toward a person because of his or her gender which is sufficiently severe or pervasive to create an unprofessional and hostile working environment. If you have any questions about what constitutes prohibited harassing conduct, ask your supervisor, the Chief Financial and Administrative Officer or another member of the Leadership Team.

If you feel that you are being harassed or subjected to any form of inappropriate conduct at work, or if you observe work-related harassment or inappropriate conduct in the workplace, you are required to immediately notify your supervisor. If you do not feel comfortable reporting your concerns to your supervisor, or if you have not received a satisfactory response within five (5) business days of reporting any incident that you perceive to be harassment, you should immediately contact the Chief Financial and Administrative Officer at (916) 285-1848. No employee will be disciplined for making a good faith report of conduct covered by this policy. Every report of perceived harassment will be fully investigated and corrective action will be taken where appropriate. Violation of this policy will result in disciplinary action, up to and including discharge. All complaints will be kept confidential to the extent possible, but

## Pacific Crest Trail Association
## Volunteer Code of Conduct

confidentiality cannot be guaranteed. In addition, the PCTA will not allow any form of retaliation against individuals who report unwelcome conduct to management or who cooperate in the investigations of such reports in accordance with this policy. Employees who make complaints in bad faith may be subject to disciplinary action, up to and including discharge. All employees must cooperate with all investigations.

The Federal Equal Employment Opportunity Commission, California Department of Fair Employment and Housing, the Oregon Civil Rights Division, or the Washington State Department of Social and Health Services may also investigate and process complaints of harassment. Violators are subject to penalties and remedial action. The addresses of the local office of the agencies listed above may be found online.

Notifying PCTA of conduct that violates this policy is essential. PCTA cannot resolve a harassment problem without being informed of it.

### USDA Forest Service Anti-Harassment Information

The Forest Service Harassment Reporting Center is available to all employees, supervisors, contractors, and anyone who does business with the Forest Service to report harassment against FS employees or its contractors. The Harassment Reporting Center supports the enhanced Anti-Harassment Policy and Program by providing a single, dedicated channel to report harassment or bullying allegations.

The Harassment Reporting Center is designed to obtain a thorough intake of the harassment report. A complete report allows the agency to more efficiently understand the harassment claims and those involved, resulting in prompt investigation into the matter.

The Harassment Reporting Center is available 7 days a week from 7:00 a.m. to 11:00 p.m. Eastern. If you have experienced, witnessed, or received a report of harassment as a supervisor, you should call the tollfree number (844) 815-8943 to report the allegation. The Harassment Reporting Center is operated by an external contractor. Reporting Center Representatives are skilled, highly-trained non-Forest Service employees. They understand the processing and routing of all harassment reports.

Exhibit 3
Page 5

Pacific Crest Trail Association
Volunteer Code of Conduct

Page 5 of 5
v March 2022

**EXHIBIT 4**

OMB Control Number 1093-0006
Expiration Date 10/31/2024

## VOLUNTEER SERVICE AGREEMENT—NATURAL & CULTURAL RESOURCES

| 1. VOLUNTEER AGREEMENT TYPE (Choose 1)  ☐ Individual   OR   ☐ Group | 2. NAME OF GROUP (if applicable) |
|---|---|

| 3. NAME OF VOLUNTEER OR GROUP LEADER COMPLETING FORM  (Last, First) | 4. U.S. CITIZEN OR PERMANENT RESIDENT  ☐ Yes, I am a U.S. citizen or Permanent Resident  ☐ No, I am not a US Citizen or Permanent Resident  (if applicable, list visa type_____) |
|---|---|

| 5. STREET ADDRESS, APT # | 6. CITY | 7. STATE | 8. ZIP CODE |
|---|---|---|---|

| 9. DATE OF BIRTH | 10. PHONE | 11. EMAIL ADDRESS |
|---|---|---|

**12. DEMOGRAPHIC INFORMATION (Optional):** Please indicate both ethnicity and race and tell us if you are a veteran or have a disability. Multiracial respondents may select two or more races. This information will inform our understanding of diversity and inclusion among the volunteer force in the natural and cultural resource areas.

| 12a. Ethnicity (Select one): ☐ Hispanic, Latino, or Spanish Origin  ☐ Not Hispanic, Latino, or Spanish Origin | 12b. Race (Select one or more, regardless of ethnicity): ☐ American Indian or Alaskan Native  ☐ Asian  ☐ Black or African American  ☐ White  ☐ Native Hawaiian or Other Pacific Islander | 12c. Are you a Military Veteran or Active Duty Military?   ☐ Yes  ☐ No  12d. Do you have a disability? ☐ Yes  ☐ No |
|---|---|---|

### EMERGENCY CONTACT INFORMATION

| 13. NAME (Last, First) | 14. PHONE | 15. EMAIL ADDRESS |
|---|---|---|

| 16. STREET ADDRESS, APT # | 17. CITY | 18. STATE | 19. ZIP CODE |
|---|---|---|---|

### GOVERNMENT OFFICIAL COMPLETES THIS SECTION

| 20. NAME OF AGENCY/ BUREAU | 21. AGREEMENT # |
|---|---|

| 22. AGENCY CONTACT NAME (Last, First) | 23. AGENCY CONTACT EMAIL & PHONE |
|---|---|

| 24. REIMBURSEMENTS APPROVED: ☐ Yes ☐ No  Type and Rate of Reimbursement: | 25. VOLUNTEER POSITION/GROUP PROJECT TITLE: |
|---|---|

**26. Description of service to be performed.** Provide a brief abstract of volunteer or service activity and the location of the volunteer activity, and attach description of service to be performed. Service description should include details such as time and schedule commitment, use of government vehicle, use of personal equipment and/or vehicle, skills required (note certifications if necessary), level of physical activity required, etc.

VOLUNTEER/SERVICE ACTIVITY ABSTRACT

| 27. Check all that apply: | ☐ Description of service attached  ☐ Valid Driver's License required  ☐ Medical Clearance Required | ☐ OF-301b Volunteer Sign-up Form for Groups attached  ☐ Background Investigation required  ☐ Other: | ☐ Risk Assessment attached |
|---|---|---|---|

Volunteer Service Agreement                    OF301a                    USDOI - USDA - USDOC -USDOD

*Exhibit 4 / Page 1*

OMB Control Number 1093-0006
Expiration Date 10/31/2024

## PARENTAL CONSENT FOR VOLUNTEER UNDER AGE 18

| 28. NAME | 29. PHONE | 30. EMAIL ADDRESS | |
|---|---|---|---|
| 31. STREET ADDRESS, APT # | 29. CITY | 30. STATE | 31. ZIP CODE |

32. I affirm that I am the parent/guardian of the abovenamed volunteer. I understand that the agency volunteer program does not provide compensation, except as otherwise provided by law; and that the service will not confer on the volunteer the status of a Federal employee. I have read the attached description of the service that the volunteer will perform. I give my permission for _____ to participate in the specified volunteer activity.

33. (NAME OF YOUTH)

34. Parent/Guardian Signature                                           Date

## VOLUNTEER & GROUP LEADER AFFIRMATION

35. ☐ I understand that I will not receive any compensation for the above service and that volunteers are NOT considered Federal employees except as otherwise provided by law. I understand that volunteer service is not creditable for leave accrual or any other employee benefits. I also understand that either the government or I may cancel this arrangement at any time by notifying the other party. I understand that my volunteer position may require a reference check, background investigation, and/or a criminal history inquiry in order for me to perform my duties.
☐ I understand that all publications, films, slides, videos, artistic or similar endeavors, resulting from my volunteer services as specifically stated in the attached job description, will become the property of the United States, and as such, will be in the public domain and not subject to copyright laws.
☐ I understand the health and physical condition requirements for doing the work as described in the job description and at the project location.
☐ I know of no medical condition or physical limitation that may adversely affect my (or members of the group's) ability to provide this service. (If a group, see attached OF-301b)
☐ I consent to being photographed and to the release of my photographic image. (If a group, see attached OF-301b)

**I do hereby volunteer my services as described above, to assist in authorized activities at _____ and I agree to follow all applicable safety guidelines. See attached OF301b attached if a member of a group. (NAME OF FEDERAL AGENCY)**

36. Signature of Volunteer or Group Leader                                           Date

The abovenamed agency agrees, while this arrangement is in effect, to provide such materials, equipment, and facilities that are available and needed to perform the service described above, and to consider you as a Federal employee only for the purposes of tort claims, liability and injury compensation to the extent not covered by your volunteer group, if any.

37. Signature of Government Representative                                           Date

## TERMINATION OF AGREEMENT

38. Agreement Terminated Date:                                    Total Hours Completed:

39. Signature of Government Representative:

## PUBLIC BURDEN STATEMENT

Completing this form is voluntary, but failure to provide the information will prevent program participation. According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 1093-0006. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The U.S. Department of the Interior (USDOI), U.S. Department of Agriculture (USDA), U.S. Department of Defense (USDOD), and U.S. Department of Commerce (USDOC) are equal opportunity providers and employers and prohibit discrimination in all programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means of communication of program information should contact the volunteer program to which they are applying. If you would like to file a Section 508-related complaint, please contact the DOI Section 508 Program via email at section508@ios.doi.gov or phone (202) 208-1530.

## PRIVACY ACT STATEMENT

Collection and use is covered by Privacy Act System of Records INTERIOR/DOI–05 Interior Volunteer Services File System (which may be viewed at https://www.doi.gov/privacy/doi-notices) and OPM/GOVT–1 General Personnel Records (which may be viewed at https://www.opm.gov/information-management/privacy-policy/ #url=SORNs) and is consistent with the provisions of 5 USC 552a (Privacy Act of 1974), which authorizes acceptance of the information requested on this form. The information is used to identify persons interested in participating in a government volunteer program, managing the volunteer program, including tort claims and injury compensation. Records or information contained in this system may be disclosed outside the agencies participating in this program as a routine use pursuant to 5 U.S.C. 552a(b)(3. Completing this form is voluntary, but failure to provide the information will prevent program participation.

Volunteer Service Agreement                    OF301a                    USDOI - USDA - USDOC - USDOD

Exhibit 4 / Page 2

OMB Control Number 1093-0006
Expiration Date 10/31/2024

# VOLUNTEER SERVICE AGREEMENT—Natural & Cultural Resources Volunteer Sign-up Form for Groups

All volunteers that participate with an organized group on an episodic volunteer project with a federal land and water management agency must be signed up on this form (unless otherwise signed up under an individual Volunteer Service Agreement, OF-301a). Volunteers under age 18 may not use this form, and must complete an individual Volunteer Service Agreement (OF 301a). This form must accompany a group Volunteer Service Agreement (OF-301a), completed by the group leader. Group leaders are responsible for ensuring every individual signed up on this form understand the duties to be performed and the terms of the project.

| PROJECT TITLE: | | | | | | I understand the health and physical condition requirements for this position, and I know of no medical condition or physical limitation that may adversely affect my ability to provide this service. | I consent to being photographed, and to the release of my photographic image. |
|---|---|---|---|---|---|---|---|
| GROUP NAME: | | AGENCY: | | | | | |
| GROUP LEADER (Last, First): | | AGREEMENT # (OF-301A box 21): | | | | | |
| VOLUNTEER NAME (Last, First) | VOLUNTEER E-MAIL ADDRESS | VOLUNTEER TELEPHONE NUMBER | MONTH & YEAR OF BIRTH | VOLUNTEER SIGNATURE | | | |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |

OF301b
Page 1 of 2

USDOI - USDA - USDOC - USDOD

Exhibit 4 / Page 3

CIVIC SOMETHING PROGRAM 2023-5555

Expiration Date 10/31/2024

| VOLUNTEER NAME (Last, First) | VOLUNTEER E-MAIL ADDRESS | VOLUNTEER TELEPHONE NUMBER | MONTH & YEAR OF BIRTH | VOLUNTEER SIGNATURE | I understand the health and physical condition requirements for this position, and I know of no medical condition or physical limitation that may adversely affect my ability to provide this service. | I consent to being photographed, and to the release of my photographic image. |
|---|---|---|---|---|---|---|
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |
| | | | | | Yes ☐ No ☐ | Yes ☐ No ☐ |

**Burden Statement:** Completing this form is voluntary, but failure to provide the information will prevent program participation. According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 1093-0006. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The U.S. Department of the Interior (USDOI), U.S. Department of Agriculture (USDA), U.S. Department of Defense (USDOD), and U.S. Department of Commerce (USDOC) are equal opportunity providers and employers and prohibit discrimination in all programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means of communication of program information should contact the volunteer program to which they are applying. If you would like to file a Section SOB-related complaint, please contact the DOI Section SOB Program via email HYPERLINK "mailto:sectionSOB@ios.doi.gov" sectionSOB@ios.doi.gov or phone (202) 208-5530.

**Privacy Act Statement:** Collection and use is covered by Privacy Act System of Records INTERIOR/DOI–05 Interior Volunteer Services File System (which may be viewed at https://www.doi.gov/privacy/doi-notices) and OPM/GOVT–1 General Personnel Records (which may be viewed at https://www.opm.gov/information-management/privacy-policy/#url=SORNs) and is consistent with the provisions of 5 USC 552a (Privacy Act of 1974), which authorizes acceptance of the information requested on this form. The information is used to identify persons interested in participating in a government volunteer program, managing the volunteer program, including tort claims and injury compensation. Records or information contained in this system may be disclosed outside the agencies participating in this program as a routine use pursuant to 5 U.S.C. 552a(b) (3. Completing this form is voluntary, but failure to provide the information will prevent program participation.

OF301b                                                                      USDOI - USDA - USDOC - USDOD

Exhibit 4 / Page 4

# EXHIBIT 5

*Administration of Joseph R. Biden, Jr., 2021*

**Executive Order 13988—Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation**
*January 20, 2021*

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

*Section 1. Policy.* Every person should be treated with respect and dignity and should be able to live without fear, no matter who they are or whom they love. Children should be able to learn without worrying about whether they will be denied access to the restroom, the locker room, or school sports. Adults should be able to earn a living and pursue a vocation knowing that they will not be fired, demoted, or mistreated because of whom they go home to or because how they dress does not conform to sex-based stereotypes. People should be able to access healthcare and secure a roof over their heads without being subjected to sex discrimination. All persons should receive equal treatment under the law, no matter their gender identity or sexual orientation.

These principles are reflected in the Constitution, which promises equal protection of the laws. These principles are also enshrined in our Nation's anti-discrimination laws, among them Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e *et seq.*). In *Bostock* v. *Clayton County,* 590 U.S. ___ (2020), the Supreme Court held that Title VII's prohibition on discrimination "because of . . . sex" covers discrimination on the basis of gender identity and sexual orientation. Under *Bostock's* reasoning, laws that prohibit sex discrimination—including Title IX of the Education Amendments of 1972, as amended (20 U.S.C. 1681 *et seq.*), the Fair Housing Act, as amended (42 U.S.C. 3601 *et seq.*), and section 412 of the Immigration and Nationality Act, as amended (8 U.S.C. 1522), along with their respective implementing regulations—prohibit discrimination on the basis of gender identity or sexual orientation, so long as the laws do not contain sufficient indications to the contrary.

Discrimination on the basis of gender identity or sexual orientation manifests differently for different individuals, and it often overlaps with other forms of prohibited discrimination, including discrimination on the basis of race or disability. For example, transgender Black Americans face unconscionably high levels of workplace discrimination, homelessness, and violence, including fatal violence.

It is the policy of my Administration to prevent and combat discrimination on the basis of gender identity or sexual orientation, and to fully enforce Title VII and other laws that prohibit discrimination on the basis of gender identity or sexual orientation. It is also the policy of my Administration to address overlapping forms of discrimination.

*Sec. 2. Enforcing Prohibitions on Sex Discrimination on the Basis of Gender Identity or Sexual Orientation.* (a) The head of each agency shall, as soon as practicable and in consultation with the Attorney General, as appropriate, review all existing orders, regulations, guidance documents, policies, programs, or other agency actions ("agency actions") that:

(i) were promulgated or are administered by the agency under Title VII or any other statute or regulation that prohibits sex discrimination, including any that relate to the agency's own compliance with such statutes or regulations; and

(ii) are or may be inconsistent with the policy set forth in section 1 of this order.

(b) The head of each agency shall, as soon as practicable and as appropriate and consistent with applicable law, including the Administrative Procedure Act (5 U.S.C. 551 *et seq.*), consider

Exhibit 5
Page 1

1

whether to revise, suspend, or rescind such agency actions, or promulgate new agency actions, as necessary to fully implement statutes that prohibit sex discrimination and the policy set forth in section 1 of this order.

(c) The head of each agency shall, as soon as practicable, also consider whether there are additional actions that the agency should take to ensure that it is fully implementing the policy set forth in section 1 of this order. If an agency takes an action described in this subsection or subsection (b) of this section, it shall seek to ensure that it is accounting for, and taking appropriate steps to combat, overlapping forms of discrimination, such as discrimination on the basis of race or disability.

(d) Within 100 days of the date of this order, the head of each agency shall develop, in consultation with the Attorney General, as appropriate, a plan to carry out actions that the agency has identified pursuant to subsections (b) and (c) of this section, as appropriate and consistent with applicable law.

*Sec. 3. Definition.* "Agency" means any authority of the United States that is an "agency" under 44 U.S.C. 3502(1), other than those considered to be independent regulatory agencies, as defined in 44 U.S.C. 3502(5).

*Sec. 4. General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

JOSEPH R. BIDEN, JR.

The White House,
January 20, 2021.

[Filed with the Office of the Federal Register, 11:15 a.m., January 22, 2021]

NOTE: This Executive order was published in the *Federal Register* on January 25.

*Categories:* Executive Orders : Discrimination based on gender identity or sexual orientation, efforts to prevent and combat.

*Subjects:* Civil rights : Lesbian, gay, bisexual, and transgender persons, equality.

*DCPD Number:* DCPD202100057.

Exhibit 5
Page 2

2

**EXHIBIT 6**



**U.S. DEPARTMENT OF AGRICULTURE**

# Our Commitment to Civil Rights



DATE:      March 29, 2021

TO:         All USDA Employees

FROM:     Thomas J. Vilsack
            Secretary of Agriculture

SUBJECT:   Our Commitment to Civil Rights

Since the Civil Rights Act became law in 1964, our nation has made great strides to prohibit discrimination on the basis of race, ethnicity, religion, sex, sexual orientation, or national origin.  Encouraged by the progress our country has achieved since this landmark law, we also recognize that we must continue to do more to ensure Civil Rights for all Americans. In one of his earliest executive orders, President Biden affirmed that "equal opportunity is the bedrock of American democracy" and "advancing equity, civil rights, racial justice, and equal opportunity is the responsibility of the whole of our Government." **At USDA, we are recommitting ourselves to the values of equity, inclusion and equal opportunity for each other and those we serve.**

Dr. Martin Luther King, Jr. reminded us that "our lives begin to end the day we remain silent about the things that matter." I want to be very clear about my steadfast commitment toward advancing racial justice and equity and rooting out systemic racism

*Exhibit 6/Page 1*

by strengthening civil rights programs and activities. Last week, I testified before the House Committee on Agriculture. In my statement entered into the record, I referenced the horrific shootings in Atlanta two weeks ago directed at Asian Americans. Those acts of violence, I wrote, "remind us that hatred and bigotry toward non-white Americans and gender-based violence are real, are threats, and must end." I stand in solidarity with our Asian American colleagues, family members, friends, and community members.

## Ending Discrimination in Any Form at USDA

Hate crimes reached near-record levels last year in the United States, demonstrating that our work to ensure civil rights and equal treatment is far, far from over. That's why it's important that we are united in calling out and ending discrimination in any form. There is no place for it in our great nation, and certainly no place for it here at USDA. We must be better than we've been in the past, which is why we must acknowledge this Department's terrible history of specific acts of discrimination directed at people of color and other marginalized groups. Together we must build a different USDA, one that is committed to equality and justice, celebrates diversity, and is radically inclusive of all employees and all customers.

We must also acknowledge USDA's history of systemic discrimination via policies and programs designed to benefit those with access, education, assets, privilege rather than for those without. During the hearing last week focused on USDA's discriminatory history toward Black farmers, I gave Chairman David Scott "a single and solemn commitment from me and from the team at USDA, that we will over the next four years do everything we can to root out whatever systemic racism and barriers may exist at the Department of Agriculture directed at Black farmers, socially disadvantaged farmers, and people who live in persistently poor areas in rural America." I want us all committed to one common purpose: To be a USDA that represents and serves all Americans. We cannot truly be the People's Department as President Lincoln intended unless we truly serve all people. We will be a USDA that is committed to ensuring equity across the Department, removing barriers to access, and building a workforce more representative of America.

## Our Civil Rights Staff

We could not do this important work without the Office of the Assistant Secretary for Civil Rights (OASCR) and your respective agency Civil Rights Offices, which provide leadership and direction for the fair and equitable treatment of all USDA customers and

*Exhibit 6 / Page 2*

employees while ensuring the delivery of quality programs and enforcement of civil rights. OASCR ensures compliance with applicable laws, regulations, and policies for USDA customers and employees regardless of race, color, national origin, sex (including gender identity and expression), religion, age, disability, sexual orientation, marital or familial status, political beliefs, parental status, protected genetic information, or because all or part of an individual's income is derived from any public assistance program.

In our short time in office, we have worked closely with our OASCR team on a number of important efforts. USDA has launched the first-ever USDA Racial Justice and Equity Working Group that is charged with implementing the Executive Order on Advancing Racial Equity and Support for Underserved Communities Through the Federal Government with representatives from across our Department. Our Senior Advisor for Racial Equity in the Office of the Secretary will partner and work closely with our OASCR team and other leaders to advance our collective equity efforts in the months and years to come. Whether you are a food safety inspector, firefighter, loan officer, agronomist or lawyer, this work will involve you—and everyone who works at USDA.

**This Will Take All of Us**

We cannot do this important work without you. Whether you are a food safety inspector, fire fighter, loan officer, agronomist or lawyer, this involves you and everyone who works at USDA to make it a more inclusive institution every day. To that end, I have instructed my leadership team to devise a process for collecting, reviewing, and acting on suggestions from you—USDA staff—on how we can create a more diverse and equitable USDA. Look out for more information on how to share your suggestions and engage in the weeks ahead.

As Secretary, I am challenging all of us to create an inclusive and equitable work environment that embraces our differences, and that promotes equal opportunity for all. These civil rights principles are employees' rights by law and should be reflected in all we do. As an employee, if you believe you have been subjected to discrimination, you must contact a USDA EEO Counselor within 45 days of the date of the alleged discriminatory act, event, or in the case of a personnel action. EEO Counselors are part of your agency Civil Rights Office and contact information can be found on the OASCR web-page.

Exhibit 6 / Page 3

As USDA employees, you represent an America committed to working for the common good and treating everyone with dignity and respect. Together, we will promote an ethical, equitable and inclusive culture that preserves the faith and trust of the American people in public service. I am confident you will do your part and I pledge to do mine as your Secretary.

Thank you,

Secretary Vilsack

Exhibit 6/Page 4

EXHIBIT 7



United States
Department of
Agriculture

Office of the Secretary
Washington, D.C. 20250

June 8, 2022

## USDA Civil Rights Policy Statement

At USDA, we are recommitting ourselves to the values of equity, inclusion, and equal opportunity for each other and those we serve. As Secretary, I will work with our dedicated team to intentionally build and advance a culture of belonging which empowers a diverse mix of people across USDA. It is USDA's mission to actively advance racial justice and equity for one another by rooting out systemic racism and strengthening civil rights programs while building trust within and outside the Department. This commitment is reflected in USDA's Strategic Plan 2022-2026, USDA's Equity Action Plan, and the Office of the Assistant Secretary for Civil Rights' draft FY 2022-2026 Strategic Plan.

As a Department, our core values of respect and dignity, equity and inclusion, trust and integrity, service and results, and science leadership serve as guiding principles, defining appropriate behaviors, expectations for all employees, and directing decision making throughout all levels of the organization.

No employee, former employee, or applicant for employment at the Department will be denied equal opportunity because of race, color, sex, national origin, religion, age, disability, pregnancy, sexual orientation, gender identity, genetic information, retaliation, or any other non-merit-based factor. This not only is the law; it is an essential component of the Department's mission and our responsibility to the public we serve.

All employees have the freedom to compete on a fair and level playing field with equal opportunity for available employment and advancement opportunities. Equal employment opportunity covers all personnel/employment programs, management practices, and decisions, including recruitment/hiring, merit promotion, transfer, reassignments, training and career development, benefits, and separation. These civil rights principles are more than employees' rights by law—they are core values at the USDA.

USDA strives to become a leader in EEO and a model employer. All USDA applicants and employees have the right not only to be free from harassment and discrimination but also to raise an allegation of harassment or discrimination and not fear reprisal. I will not tolerate any form of workplace harassment. Agencies are required to respond to, address, and correct any harassing conduct before it becomes severe or pervasive, and USDA will continue to quickly process complaints of harassment, discrimination, and reprisal and provide robust EEO training to all employees.

I will hold all employees and managers accountable for doing their part to ensure all USDA applicants, customers, constituents, and stakeholders are provided equal access to all opportunities, programs, and services available through USDA. Accordingly, all senior leaders, managers, and supervisors must act in a manner that is deserving of the public's trust and with the utmost integrity in everything we do as public servants, leading always by example, treating everyone with dignity and respect, and promoting an ethical, equitable, and inclusive culture. All must comply with EEO principles as we perform the Department's mission.

Sincerely,

Thomas J. Vilsack
Secretary

Exhibit 7/Page 1

EXHIBIT 8

**JimLBanks@verizon.net**

| | |
|---|---|
| **From:** | JimLBanks@verizon.net |
| **Sent:** | Friday, August 12, 2022 5:29 PM |
| **To:** | 'mwargo@pcta.org' |
| **Subject:** | LGBTQIA+ exclusive trail maintenance project |

Ms. Wargo, the trail maintenance project scheduled for September 8th to 11th at Harts Pass that is exclusively for the LGBTQIA+ community to the exclusion of people who are not, is a violation of Federal anti-discrimination laws as well as a violation of the civil rights of any straight person who would like to volunteer. How do you justify this? If the roles were reversed, i.e., a project for only straight people, I know how the PCTA and the US Forest Service would react. I will be filing a complaint with the US Forest Service in preparation for the civil rights lawsuit that I intend to file against the PCTA. This is a heads up to you to give you a chance to stop this violation of the law. I expect to hear from you ASAP in terms of how you intend to deal with this.

Jim Banks, member in good standing

Exhibit 8
Page 1
1

**EXHIBIT 9**



OMB Control Number 0508-0002

### UNITED STATES DEPARTMENT OF AGRICULTURE (USDA)
Program Discrimination Complaint Form

First Name: Jim          Middle Initial: L          Last Name: Banks

Provide Your Full Mailing Address
Number and Street, PO Box, Road, or Route: 505 Alabama Street

Apartment Number (if applicable):

City, State and Zip Code: Huntington Beach, CA 92648

Email Address: JimLBanks@verizon.net

Telephone Number (with area code): (714) 813-1322

Alternate Telephone (with area code):

Best Way to Reach You (select one)
Mail: ◯          Phone: ◯          E-mail: ◉          Other: ◯   phone or text is also ok

Do you have a representative (lawyer or other advocate) for this complaint?
Yes: ◯          No: ◉

If Yes is selected, please provide the following information about your representative:

Representative First Name:          Last Name:

Number and Street, PO Box, Road or Route:
Apartment Number:

City, State and Zip Code:

Telephone:          Email:

1. Who do you believe discriminated against you? Use additional pages, if necessary.
   Name(s) of person(s) involved in the alleged discrimination (if known):
   Pacific Crest Trail Association/U.S. Forest Service/Okanogan-Wenatchee National Forest
   (See attached pages for more information.)

Please name the program you applied for (if known/if applicable):

Volunteer Trail Maintenance project on the Pacific Crest Trail

Exhibit 9/Page 1

Please select the USDA Agency below that conducts the program or provides Federal financial assistance for the program (if known):

Farm Service Agency ⭕          Food and Nutrition Service: ⭕

Rural Development ⭕            Natural Resource Conservation Service ⭕

Forest Service ◉              Other: _____

2. What happened to you?   State the date when the alleged discrimination occured and then describe what happened.  If the alleged discrimination occurred more than once, please provide the other dates and describe what happened.  Use additional pages, if necessary, and please include any supporting documents that would help show what happened.

On August 8, 2022, I logged onto the website for the Pacific Crest Trail Association ("PCTA") to look for volunteer trail maintenance projects in northern Washington. I was interested in this location because I was planning a backpacking trip in northern Washington on the PCT.  I saw that there was going to be a trail maintenance project at Harts Pass which is near where I was going to end my hike and the time of the project fit within my timeframe. However the website information said this project was not for me because of my sexual orientation.  See attached page for more information and also attached copies of the information posted on the PCTA website.

_____

3. Where did the discrimination occur?
   Address of location where incident occurred:
   The discrimination occurred online on the PCTA's website.
   _____
   Number, Street, PO Box, Road, Route

   _____      _____      _____
        City                   State               Zip Code

4. It is a violation of the law to discriminate against you based on the following: race, color, national origin, religion, sex, disability, age, marital status, family/parental status, income derived from a public assistance program, and political beliefs. (Not all bases apply to all programs) Reprisal is prohibited based on prior civil rights activity.

   I believe I was discriminated against based on my

   | sexual orientation |

4

Exhibit 9/Page 2

5. Remedies: How would you like to see this complaint resolved?

The PCTA should be instructed that they cannot have projects, programs, etc. that are specifically for people that identify as one or more specific gender identy groups to the exclusion of others. The US Forest Service should be instructed to make sure the PCTA is following all applicable anti-discrimination laws since the PCTA recieves substantial funding from the Forest Service. (See attached pages for further resolution provisions.)

6. Have you filed a complaint about the incident(s) with another federal, state, or local agency or with a court?

Yes: ◯    No: ◉, but I reserve my right to do so.

If yes, with what agency or court did you file? _____

When did you file? _____    _____    _____
                       Month          Day          Year

Signature: *Jim L Banks*    Date: August 15, 2022

**Mail Completed Form To:**
USDA
Office of the Assistant Secretary for Civil Rights
1400 Independence Ave, SW, Stop 9410
Washington, D.C.  20250-9410

**Telephone Numbers:**
Local area: (202) 260-1026
Toll-free: (866) 632-9992
Local or Federal relay: (800) 877-8339
Spanish relay: (800) 845-6136
Fax: 1-833-256-1665

5

Exhibit 9/Page 3

Attachment To Form AD-3027
Program Discrimination Complaint Form

Jim L. Banks

United States Department of Agriculture Regulation DR 4330-002 promulgated on July 27, 2021 is entitled "Nondiscrimination in Programs and Activities Receiving Federal Financial Assistance From USDA." Section 4a.(7) provides as follows: "No person will be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in programs or activities receiving financial assistance from USDA based on Sex (including sexual orientation and gender identity)."

The Pacific Crest Trail Association ("PCTA") receives substantial financial assistance from the US Forest Service, an agency of the USDA, and therefore comes within the parameters of Regulation DR 4330-002.

The description of the volunteer trail maintenance project at issue on the PCTA's website (PCTA.org) provides as follows: "This project is for people who identify as Lesbian, Gay, Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit and other queer identities. ...... If you are straight and cisgender please respect that this trail maintenance event is not for you." A copy of that webpage is attached.

I am a heterosexual, biological male and thus the PCTA is excluding me from this project because of my sexual orientation and gender identity.

I cannot imagine a more open and shut case of outright discrimination and one that falls squarely within the prohibition of discrimination contained in Regulation DR 4330-002.

I, as a member in good standing of the PCTA, sent an email to the CEO of the PCTA pointing out the blatant discrimination and double standard they are practicing, but I have received no response to date.

I respectfully request that you immediately investigate this act of discrimination and act quickly to bring the PCTA in compliance with the USDA regulations for recipients of USDA financial assistance. This trail maintenance project is scheduled to begin on September 8, 2022 and must be shut down and not allowed to go forward with its discriminatory list of who can and who cannot participate.

The PCTA should be reprimanded for this blatant violation of Regulation DR 4300-002 and must be required to sign some kind of formal agreement that they will not restrict participation in any of their trail maintenance projects or other activities to persons of some

*Exhibit 9 / Page 4*

gender identity groups to the exclusion of others. It should be made clear to them that this behavior could jeopardize their continued Forest Service/USDA funding. The US Forest Service should be directed that they need to monitor the activities of the PCTA more closely to prevent this type of violation of controlling regulations.

Additionally, I would ask that you make it very clear to the PCTA that Regulation DR 4300-002 Section 4c(1) prevents any recipient of USDA financial assistance from retaliating against or intimidating a person because they filed a complaint.

Exhibit 9/Page 5

**EXHIBIT 10**

U.S. DEPARTMENT OF AGRICULTURE
WASHINGTON, DC 20250

| **DEPARTMENTAL REGULATION** | NUMBER:<br>DR 4330-002 |
| --- | --- |
| SUBJECT:  Nondiscrimination in Programs and Activities Receiving Federal Financial Assistance from USDA | DATE:<br>July 27, 2021 |
| OPI:  Office of the Assistant Secretary for Civil Rights | EXPIRATION DATE:<br>July 27, 2026 |

Section      Page

1. Purpose    1
2. Special Instructions/Cancellations    2
3. Scope    2
4. Policy    2
5. Complaint Processing    3
6. Monitoring of Compliance and Oversight    5
7. Reasonable Accommodations    6
8. Reviews    6
9. Roles and Responsibilities    6
10. Inquiries    8

Appendix A – Acronyms and Abbreviations    A-1
Appendix B – Definitions    B-1
Appendix C – Authorities and References    C-1
Appendix D – Complaint Form Information    D-1

1. PURPOSE

   a. This Departmental Regulation (DR) establishes the United States Department of Agriculture (USDA) policy for ensuring programs and activities receiving Federal financial assistance from USDA are in compliance with applicable civil rights laws, including the prohibition against discrimination in those programs and activities.

   b. This DR establishes the policy for achieving compliance through civil rights complaints against recipients of Federal financial assistance from USDA who operate those programs and activities.

Exhibit 10
Page 1

2.  SPECIAL INSTRUCTIONS/CANCELLATIONS

This DR supersedes DR 4330-002, *Nondiscrimination in Programs and Activities Receiving Federal Financial Assistance From USDA*, dated March 3, 1999.

3.  SCOPE

This regulation applies to all programs and activities receiving Federal financial assistance from USDA Mission Areas and agencies.

4.  POLICY

a.  No person will be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in programs or activities receiving financial assistance from USDA based on:

(1)  Race;

(2)  Color;

(3)  National origin;

(4)  Age;

(5)  Disability;

(6)  Because of prior civil rights activity;

And as applicable:

(7)  Sex (including sexual orientation and gender identity);

(8)  Religion; or

(9)  Political beliefs.

b.  USDA will enforce this policy through the fair and efficient processing and addressing of complaints of discrimination and non-compliance with civil rights laws filed against recipients of USDA financial assistance. USDA will also enforce this policy through civil rights compliance reviews, which will be addressed in greater detail in another forthcoming DR.

c.  No recipient of USDA financial assistance will retaliate against or intimidate a person because they:



Exbibit 10

2

(1) File a discrimination complaint against a recipient of financial assistance from USDA or participate in the processing of such a complaint:

(2) Participate in or provide information for a civil rights review of a program or activity receiving financial assistance from USDA; or

(3) Aid or support the enforcement of Federal civil rights laws or policies against a recipient or take other action in opposition to prohibited discriminatory practices by a recipient.

5.  COMPLAINT PROCESSING

   a.  Filing a Complaint

     (1) Any individual or group of individuals that believe they have been subjected to discrimination in a program or activity receiving Federal financial assistance from USDA may file a complaint with the Secretary of Agriculture (Secretary), or the Assistant Secretary for Civil Rights (ASCR) or their designee.

     (2) Individuals or groups must file their complaint within 180 calendar days of the date of the alleged discrimination or non-compliance with the law. The ASCR may extend the filing deadline for good cause. All complaints must be signed by the complainant.

     (3) Complaints must be filed using either Form Agriculture Department (AD) -3027, *USDA Program Discrimination Complaint Form* or another written document with all the information required by Form AD-3027. See Section 5c(1)(c) below, for information regarding administrative closures. See Appendix D, *Complaint Form Information,* for the list of information required by Form AD-3027.

   b.  Voluntary Compliance and Alternative Dispute Resolution (ADR)

     (1) During the complaint process, the USDA agency that provided financial assistance to the recipient named in a complaint will participate in efforts to bring the recipient into voluntary compliance with civil rights laws.

     (2) The ASCR will utilize ADR to achieve a recipient's voluntary compliance with civil rights laws. The ASCR will determine where to utilize ADR.

     (3) The ASCR will forward all complaints having claims under the *Age Discrimination Act of 1975,* to the mediation agency designated by the Secretary, Health and Human Services, for possible resolution.

Exhibit 10

c.  Complaint Intake and Notifications

    (1)  The ASCR:

        (a)  Will review each complaint to determine if it was timely filed and relates to civil rights laws USDA enforces.  The ASCR will refer complaints not within USDA's jurisdiction or subject to concurrent jurisdiction to the appropriate Federal, State, or local agencies;

        (b)  Will keep the complainant's identity confidential to the extent permitted by law until the complainant has provided written authorization to share their identity;

        (c)  May close a complaint during any stage of the complaint process after a determination that procedural grounds exist for an administrative closure;

        (d)  Will accept complaints for further processing if they are not closed during intake; and

        (e)  Will promptly investigate all accepted complaints that indicate a possible failure by a recipient to comply with any applicable civil rights law, rule, regulation, or policy.

    (2)  Good cause must exist for the ASCR not to investigate an accepted complaint.  The ASCR will explain the good cause in the notification of disposition.  In those situations, the ASCR will explore the feasibility of referring the complaint to the primary recipient (e.g., a State agency) for investigation.

d.  Investigations

    (1)  Investigations must be conducted impartially.  They will be limited to learning facts and collecting evidence relevant to determining if a recipient discriminated against a complainant in violation of a Federal civil rights law, rule, regulation, or policy, or was in non-compliance in another way.

    (2)  The ASCR will conduct investigations in accordance with standards and requirements found in Federal statutes, regulations, Executive Orders, case law, policies, and guidance.

    (3)  The ASCR will maintain a record of the evidence and findings of fact collected in the investigation.

e.  Complaint Adjudication and Disposition

    (1)  When the investigation is completed, the ASCR will review and analyze the facts and evidence and apply proper legal standards to ensure findings of fact and conclusions of law are consistent with statute, regulation, and case law.

Exhibit 10

4

(2) If the ASCR finds no violation or determines that no further action is warranted, the ASCR will provide written notification to the recipient and the complainant of that decision.

(3) If the ASCR determines that the recipient is in non-compliance with civil rights law, rule, regulation, or policy, the ASCR will promptly notify the recipient of that conclusion. The Mission Area or agency that provided funds to the recipient will then initiate efforts to bring the recipient into voluntary compliance.

(4) If the Mission Area or agency, and recipient reach a resolution to bring the recipient into voluntary compliance with civil rights law, rule, regulation, or policy, the resolution will be documented in a signed written agreement between the recipient and the ASCR. If the complainant and recipient reach a resolution, the terms will be documented in a written agreement between them, and a signed copy will be provided to the ASCR.

(5) If voluntary compliance is not achieved, the ASCR will issue a Final Agency Decision (FAD) that determines if the recipient discriminated or was in non-compliance with a civil rights law, rule, regulation, or policy. The FAD will summarize the facts and evidence, state findings of fact and conclusions of law for each issue and provide appeal rights if applicable. In appropriate circumstances, the ASCR will initiate proceedings under 7 Code of Federal Regulations (CFR) §§ 15.8, *Procedure for effecting compliance*; 15.9, *Hearings*; and 15.10, *Decisions and notices*.

(6) If the FAD concludes the recipient discriminated or was in non-compliance with a civil rights law, rule, regulation, or policy, the ASCR will direct the recipient to remedy the discrimination or correct the non-compliance or will direct or recommend resolution efforts aimed at achieving voluntary compliance. This may include payment of damages where permitted by law.

6. MONITORING COMPLIANCE AND NOTIFYING JUSTICE DEPARTMENT

a. When the ASCR issues a FAD with a finding of discrimination or non-compliance with a civil rights law, rule, regulation, or policy by a recipient and orders steps to remedy the discrimination or achieve compliance, the ASCR will monitor the recipient until there is full compliance with the FAD.

b. When the ASCR and the recipient sign an agreement to bring the recipient into voluntary compliance with the law, the ASCR will monitor the recipient until there is full compliance with the agreement. Similarly, the ASCR will monitor the recipient until there is full compliance with any agreement reached between the recipient and the complainant.

Exhibit 10

   c.   Once the ASCR determines the recipient has achieved full compliance, the ASCR will issue a letter closing the complaint.

   d.   When a recipient refuses or fails to comply with any of the terms in a FAD or agreement, the ASCR will notify the U.S. Department of Justice (DOJ) and may take action under 7 CFR §§ 15.8-15.10 to terminate or suspend all USDA financial assistance to the recipient.

## 7. REASONABLE ACCOMMODATIONS

The ASCR will make reasonable accommodations in the complaint process to assist complainants or other persons with a disability.

## 8. REVIEWS

   a.   USDA will conduct compliance reviews of programs and activities receiving financial assistance from USDA to ensure there is full compliance with Federal civil rights laws, rules, regulations, and policies.

   b.   Civil Rights Directors will develop annual compliance review schedules consistent with this USDA DR on compliance as part of their program for monitoring recipients.

## 9. ROLES AND RESPONSIBILITIES

   a.   The Secretary will:

      (1)  Provide leadership, direction, and establish policy for USDA enforcement of civil rights laws and compliance with those laws by recipients of financial assistance from USDA; and

      (2)  Ensure the availability of adequate resources to support and carry out a broad range of civil rights compliance and enforcement activities throughout USDA.

   b.   The ASCR or their designee will:

      (1)  Direct, coordinate, and provide oversight over USDA's enforcement of civil rights laws and compliance with those laws by recipients of USDA financial assistance through rules, regulations, policy, complaint processing, compliance reviews, and other actions;

      (2)  Ensure USDA Mission Areas and agencies inform recipients of their civil rights compliance responsibilities through training, dissemination of information, and technical assistance;

Exhibit 10

6

    (3)  Review, supplement, or modify investigations, decisions, agreements, and other complaint processing actions taken by Mission Area or agency officials designated by the ASCR, and provide other oversight;

    (4)  Process appeals, where applicable, of Mission Area or agency decisions; and

    (5)  Recommend enforcement actions to DOJ to ensure recipients' compliance with Federal civil rights requirements.

c.    Under and Assistant Secretaries, supported by their Civil Rights Directors, will:

    (1)  Enforce compliance with civil rights laws by recipients of financial assistance from their Mission Areas;

    (2)  Issue Mission Area directives and policy consistent with USDA rules, regulations, and policy;

    (3)  Process complaints against recipients consistent with USDA rules, regulations, procedures, and established memoranda of understanding;

    (4)  Ensure recipients' compliance with FADs and settlement and voluntary resolution agreements, including timely implementation of corrective action plans; and

    (5)  Develop annual compliance review schedules and conduct reviews of recipients.

d.    Agency Heads will:

    (1)  Enforce compliance with civil rights laws by recipients of financial assistance from their agencies;

    (2)  If applicable, ensure that recipients timely submit their signed Statements of Assurance or Federal-State Agreements;

    (3)  Assist and cooperate with the ASCR and Civil Rights Directors in resolving recipients' non-compliance; and

    (4)  Collect and analyze data and information to evaluate success in ensuring recipients' compliance with civil rights laws.

e.    The General Counsel will:

    (1)  Provide legal advice and guidance to support USDA's programs to ensure compliance with civil rights laws by recipients of USDA financial assistance; and

    (2)  Conduct legal sufficiency reviews, when required or requested by the ASCR, of:

Exhibit 10

    (a)   Findings of discrimination or non-compliance with civil rights laws;

    (b)   The terms of settlement or voluntary resolution agreements;

    (c)   Awards of compensatory damages and attorney fees; and

    (d)   Other legal issues.

## 10. INQUIRIES

All USDA Mission Areas, agencies, and staff offices should direct questions and inquiries regarding this DR to the Center for Civil Rights Operations (CCRO), Compliance Division, via email at CCROCOMPLIANCE@usda.gov.

-END-

Exhibit 10

EXHIBIT 11

**JimLBanks@verizon.net**

**From:** Megan Wargo <mwargo@pcta.org>
**Sent:** Friday, August 19, 2022 10:47 AM
**To:** JimLBanks@verizon.net
**Subject:** RE: LGBTQIA+ exclusive trail maintenance project

Dear Mr. Banks:

I would like to acknowledge receipt of your email.  We are seeking advice from our counsel.

**Megan Wargo**
She/Her/Hers: Why Pronouns Matter
*Acting Executive Director and CEO*
Pacific Crest Trail Association
415-516-3126
www.pcta.org

*Ensure the future of the PCT by*
*including the PCTA in your estate plans.*

☒ _____

**From:** JimLBanks@verizon.net <JimLBanks@verizon.net>
**Sent:** Friday, August 12, 2022 5:29 PM
**To:** Megan Wargo <mwargo@pcta.org>
**Subject:** LGBTQIA+ exclusive trail maintenance project

You don't often get email from
.jimlbanks@verizon.net. Learn why
this is important

Ms. Wargo, the trail maintenance project scheduled for September 8th to 11th at Harts Pass that is exclusively for the LGBTQIA+ community to the exclusion of people who are not, is a violation of Federal anti-discrimination laws as well as a violation of the civil rights of any straight person who would like to volunteer.  How do you justify this?  If the roles were reversed, i.e., a project for only straight people, I know how the PCTA and the US Forest Service would react.  I will be filing a complaint with the US Forest Service in preparation for the civil rights lawsuit that I intend to file against the PCTA.  This is a heads up to you to give you a chance to stop this violation of the law.  I expect to hear from you ASAP in terms of how you intend to deal with this.

Jim Banks, member in good standing

Exhibit 11

1

# EXHIBIT 12

**JimLBanks@verizon.net**

| | |
|---|---|
| **From:** | Bailey, Monica - ASCR, Washington, DC <Monica.Bailey@usda.gov> |
| **Sent:** | Thursday, August 25, 2022 5:59 AM |
| **To:** | jimlbanks@verizon.net |
| **Subject:** | Jim Banks USDA Correspondence: 2022-08-00012794 |
| **Attachments:** | Ack. letter Jim Banks 2022-08-12794_.pdf |

Mr. Banks,

Good morning.

,
Due to the COVID-19 Pandemic you're receiving our response via email.  Attached is our response in reference to your complaint.

If you have any further questions or concerns in reference to your complaint, please feel free to contact me.

Thank you.

 Monica J. Bailey
Equal Opportunity Specialist
U.S. Department of Agriculture
Office of the Assistant Secretary
for Civil Rights
Washington, DC 20250

 202-572-5924
 monica.bailey@usda.gov

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

Exhibit 12
Page 1



August 24, 2022

**United States
Department of
Agriculture**

Office of the
Assistant Secretary
for Civil Rights

Center for Civil
Rights Enforcement

Program Complaints
Division

1400 Independence
Avenue SW

Washington, DC
20250

Mr. Jim L. Banks
505 Alabama Street
Hunting Beach, California 92648

Electronic Delivery:
jimlbanks@verizon.net

RE: USDA Complaint Number: 2022-08-00012794

Dear Mr. Banks:

On August 16, 2022, the United States Department of Agriculture (USDA), Office of
the Assistant Secretary for Civil Rights (OASCR), Center for Civil Rights
Enforcement, Program Complaints Division, received your eFax complaint dated
August 15, 2022.

We are reviewing your correspondence to determine whether we have jurisdiction
over your concern(s). PCD has instituted counseling, defined as receipt and review of
initial complaint correspondence designed to allow inclusive efforts to counsel
complainants and/or conciliate issues prior to formal acceptance of a complaint. The
civil rights office representing the Agency impacted by your allegations of
discrimination may contact you upon review of your complaint.

If you do not want to participate in counseling, notify our office or inform the Agency
when contacted and your correspondence will be forwarded to OASCR for processing.
If you have additional questions, contact our office by mail, fax, or email at:

USDA - OASCR
Mr. Archie D. Crawford, Director
Program Complaints Division
1400 Independence Avenue, SW
Washington, DC 20250-9430
FAX: 833-256-1665
or
Email: ProgramComplaints@usda.gov

So that we may contact you regarding your administrative complaint, it is very
important that you notify this office immediately if you have change of address or
telephone number

USDA IS AN EQUAL OPPORTUNITY PROVIDER, EMPLOYER AND LENDER

Exhibit 12
Page 2

Mr. Jim Banks
Page 2


**Information pertaining to your complaint is being collected in accordance to and under the authorities outlined below:**


**Authority:** U.S.C. 301, 42 U.S.C. 2000d, 42 U.S.C. 3608(d), 42 U.S.C. 12101, 20 U.S.C. 168, 29 U.S.C. 794, 15 U.S.C. 1691, and 7 U.S.C. 2011 authorizes the collection of this information.

**Purpose:** USDA will maintain any and all information you provided as part of your complaint to review, process, and approve civil rights cases; to create, manage, track, and report USDA Office of Assistant Secretary for Civil Rights (OASCR) complaints and case status, in its system of record.

**Routine Uses:** The information you provided will be used by and disclosed to USDA personnel, included but is not limited to vendors, agents and other business personnel who need the information to assist in activities related to USDA Civil Rights Program(s) or may be disclosed outside USDA as a routine use pursuant to the protection provided by Privacy Act (5 U.S.C. 552a(b)(3)), to the extent that such uses are compatible with the purposes for which the information was collected and stored.

**Disclosure:** Furnishing this information is voluntary; however, failure to furnish the requested information may delay or prevent the processing of your complaint.

You may also contact us through our customer service unit, the Information Research Service at (866) 632-9992 (toll free), (202) 260-1026, or (800) 845-6136 (Spanish). Persons with disabilities may contact us through the Federal Relay Service at (800) 877-8339.

Sincerely,

**SANDRA HAMMOND**
Digitally signed by
SANDRA HAMMOND
Date: 2022.08.24
15:58:24 -04'00'

Sandra Hammond
Lead Equal Opportunity Specialist
(Intake Team Lead)
Program Complaints Division


Exhibit 12
Page 3

**EXHIBIT 13**



**United States Department of Agriculture**

**Office of the Assistant Secretary for Civil Rights**

**Center for Civil Rights Enforcement**

**Program Complaints Division**

1400 Independence Avenue SW

Washington, DC 20250

October 21, 2022

Mr. Jim L. Banks
505 Alabama Street
Hunting Beach, California 92648

ELECTRONIC DELIVERY:
jimlbanks@verizon.net

RE: USDA Complaint Number: 2022-08-00012794

Dear Mr. Banks:

On August 16, 2022, the United States of Department of Agriculture (USDA), Office of the Assistant Secretary for Civil Rights, Center for Civil Rights Enforcement (CCRE), Program Complaints Division, received your correspondence dated August 15, 2022, alleging discrimination in a program administered by USDA. This office is responsible for processing administrative complaints alleging discrimination in a program conducted by or receiving Federal financial assistance from USDA.

The Informal Complaint process was concluded on October 6, 2022. Since we were unable to resolve your concern(s) under our informal process, the next steps in the process are Investigation and Adjudication.

The accepted allegation is:

Whether Forest Service Officials discriminated against you on the basis of sexual orientation when they denied your participation to work on the Pacific Crest Trail Association (PCTA).

If you do not agree with the defined claim(s) of your acceptance, you must provide us with sufficient reasons, in writing, within seven (7) calendar days of receipt of this letter. The statement should be sent to the following address, fax, or email:

> Archie Crawford, Program Complaints Division
> Center for Civil Rights Enforcement
> United States Department of Agriculture
> 1400 Independence Avenue, SW, Stop Code: 9410
> Washington, DC 20250
> FAX: 833-256-1665 or E-mail: ProgramComplaints@usda.gov

Mr. Jim Banks
Page 2

## INVESTIGATION

Please note that if additional information reveals that our office lacks jurisdiction over the allegations you are raising, your administrative complaint may be dismissed at any time during the course of the investigation.

In addition, we want to be sure you understand that it is your responsibility to protect your rights and to utilize the Federal court system, should you desire to do so. Please note that if you file in Federal court, USDA may no longer be able to process your administrative complaint. You may wish to consult with an attorney regarding your options.

Once we receive an Agency Position Statement from the USDA agency you complained about, an Investigator will be assigned to your case. After an investigation has been completed, a Report of Investigation (ROI) to include your complaint will be forwarded to the Adjudication Division for issuance of the Final Agency Decision (FAD).

## ADJUDICATION

During the adjudication stage, we will review the ROI and perform a legal and factual analysis of the complaint to determine whether discrimination occurred. Based on this analysis, we will issue a FAD. The FAD will contain an analysis of the claims in the complaint and conclusions and findings, including whether discrimination was found.

If discrimination is found, we may attempt to settle the complaint or take other corrective action, as appropriate. If no discrimination is found, the complaint is closed.

A copy of the FAD will be mailed to the complainant after it is signed by the Executive Director of CCRE.

If your complaint alleges discrimination based on disability, you may appeal the FAD to the Assistant Secretary for Civil Rights within 90 days of receipt of the FAD. This opportunity for appeal applies only to complaints alleging discrimination based on disability.

This office will attempt to process your complaint as expeditiously as possible.

In accordance with Federal civil rights law and USDA civil rights regulations and policies, USDA, its agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Exhibit 13
Page 2

Mr. Jim Banks
Page 3

No person shall be subject to reprisal or harassment for filing a discrimination
complaint against USDA; participating in or contributing to the identification,
investigation, prosecution, or resolution of civil rights violations by an agency of USDA
or by a recipient of Federal financial assistance from USDA; or otherwise aiding or
supporting the enforcement of civil rights laws, rules, regulations, or policies applicable
to USDA programs. Any individual alleging such reprisal or harassment may file a
complaint with USDA. We will investigate such allegations of reprisal or harassment.
If you believe you have been retaliated against, please explain the circumstances,
including the protected activity you believe was the basis for the retaliation.

If you have any questions regarding your administrative complaint, please contact the
Information Research Service, at (866) 632-9992 (toll-free), or (202) 260-1026.
Persons with disabilities may contact us through the Federal Relay Service at
(800) 877-8339.

Sincerely,

ARCHIE
CRAWFORD
Digitally signed by
ARCHIE CRAWFORD
Date: 2022.10.21
10:01:40 -04'00'

Archie D. Crawford
Director
Program Complaints Division

cc: Anzanette Randall, Acting Director, Office of Civil Rights, Forest Service Agency

Exhibit 13
Page 3

# EXHIBIT 14



November 22, 2022

**United States
Department of
Agriculture**

**Office of the
Assistant Secretary
for Civil Rights**

**Center for Civil
Rights Enforcement**

**Program
Complaints
Division**

1400 Independence
Avenue SW

Washington, DC
20250

Mr. Jim L. Banks
505 Alabama Street
Hunting Beach, California 92648

Electronic Delivery:
jimlbanks@verizon.net

RE: USDA Complaint Number: 2022-08-12794

Dear Mr. Banks:

On August 16, 2022, the United States of Department of Agriculture (USDA), Office of the Assistant Secretary for Civil Rights, Center for Civil Rights Enforcement (CCRE), Program Complaints Division received your correspondence dated August 15, 2022, alleging discrimination in a program administered by USDA. This office is responsible for processing administrative complaints alleging discrimination in a program conducted by or receiving Federal financial assistance from USDA.

This letter will replace our acceptance letter dated October 21, 2022.

In your complaint you stated officials of the Pacific Crest Trail Association, recipient of Federal financial assistance from Forest Service, discriminated against you on the bases of sexual orientation and gender identity when you learned from their website, they were hosting a trail maintenance event for Lesbian, Gay, Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit and other queer identities.

Based on the information provided, you are alleging discrimination on the bases of sexual orientation and gender identity. Although they are prohibited bases of discrimination, they are not enforceable or covered by USDA civil rights statutes or Departmental regulations under an assisted program.

While we have jurisdiction over program discrimination complaints, we do not have the authority to process agency program policy or procedural issues. Therefore, we are forwarding your concerns to the office listed below for consideration:

USDA-Forest Service (FS)
Anzanette Randall, Deputy Executive Director
Office of Civil Rights (OCR)
201 14th Street, SW
Sidney R. Yates Buillding
Washington, DC  20250
Phone: (240) 383-0411

Mr. Jim Banks
Page 2

We are notifying FS of this matter. Please contact the office identified for further information.

In accordance with Federal civil rights law and USDA civil rights regulations and policies, USDA, its agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs).  Remedies and complaint filing deadlines vary by program or incident.

No person shall be subject to reprisal or harassment for filing a discrimination complaint against USDA; participating in or contributing to the identification, investigation, prosecution, or resolution of civil rights violations by an agency of USDA or by a recipient of Federal financial assistance from USDA; or otherwise aiding or supporting the enforcement of civil rights laws, rules, regulations or policies applicable to USDA programs. Any individual alleging such reprisal or harassment may file a complaint with USDA. We will investigate such allegations of reprisal or harassment. If you believe you have been retaliated against, please explain the circumstances, including the protected activity you believe was the basis for the retaliation.

If you have any questions about this matter, please contact our customer service unit, the Information Research Service at (866) 632-9992 (toll free), (202) 260-1026, or (800) 845-6136 (Spanish). Persons with disabilities may contact us through the Federal Relay Service on (800) 877-8339.

Sincerely,

ARCHIE CRAWFORD   Digitally signed by ARCHIE CRAWFORD Date: 2022.11.22 07:26:47 -05'00'
Archie D. Crawford
Director
Program Complaints Division

cc: Anzanette Randall, Deputy Executive Director, OCR, FS

Exhibit 14
Page 2

**EXHIBIT 15**

Logo

USDA

**United States** | **Forest** | **Pacific Southwest Region**
**Department of** | **Service**
**Agriculture**

ional Office, R5
1323 Club Drive
Vallejo, CA 94592
(707) 562-8737
TDD: (707) 562-9240

| **File Code:** | 6570 |
| **Date:** | December 9, 2022 |

Mr. Jim L. Banks
505 Alabama Street
Hunting Beach, California 92648

Dear Mr. Banks,

I am responding to your civil rights claim per the request of U.S. Department of Agriculture's Office of the Assistant Secretary for Civil Rights (OASCR) letter, dated November 22, 2022. I have been informed that the complaint you submitted, dated August 16, 2022, was received, and reviewed by the OASCR, Center for Civil Rights Enforcement, Program Complaints Division. Upon review they determined the allegations were not within their authority to process, thus referring the matter directly to the Forest Service.

The Forest Service endeavors to be responsive to the public we serve and provide effective and timely service. Your claim alleged that the Pacific Crest Trail Association (PCTA), recipient of Federal financial assistance from the Forest Service, discriminated against you on the bases of sexual orientation and gender identity when you learned from their website, they were hosting a trail maintenance event for Lesbian, Gay, Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit and other queer identities (LGBTQIA+). The claim further stated that you did not speak with anyone from the PCTA or Forest Service regarding the information you viewed on their website.

The Forest Service has completed an investigation to understand and evaluate your claim. The following information was gathered around this event:

- The PCTA project description on the website clearly listed the maximum number of positions available for each project. The project displays a notice when the project is full and then offers an option to be added to a waitlist. The project was showing as full when Mr. Banks accessed the project sign-up.
- PCTA's volunteer registration system, including the waitlist, is automated. Through the system, an automatic email would have been sent to Mr. Banks upon registration, notifying he had been added to the waitlist.
- Mr. Banks was able to successfully sign up for the project waitlist without needing to specifically identify with any LGBTQIA+ designation.
- It is standard on the PCTA website to ask optional demographic questions whenever someone creates a volunteer profile; one of which includes gender identity preference. These optional demographic questions are asked per the requirements of the Forest Service Volunteer Service Agreement OF-301A form.
- Mr. Banks had signed up for the project after it was already displaying as full and was added to the waitlist. Mr. Banks was seventh in line out of eight total on the waitlist.
- The PCTA was offering trail work projects during this similar timeframe in varying locations & dates; this was not the only opportunity available within the organization to participate in a volunteer activity.



Exhibit 15
Page 1

Printed on Recycled Paper

Mr. Jim L. Banks                                                                                    2

Based upon the above information, the U.S. Forest Service has found that the PCTA did not deny any sign-ups based upon sexual orientation or gender identity. Ultimately, you were not restricted from signing up for the trail work project; the event was full and you were able to successfully sign up for the project waitlist. You did not offer sufficient evidence of sexual orientation or gender identity discrimination, nor have you demonstrated that you were denied a benefit to which you were entitled. For the reasons set forth above, the U.S. Forest Service finds that the record does not support a finding of discrimination.

In case you have any questions or need further assistance in this matter, please do not hesitate to contact Lindsey Steinwachs, Pacific Crest Trail Administrator, at (619) 372-1302 or lindsey.steinwachs@usda.gov.

Sincerely,

X

Signed by: Department of Agriculture
JODY HOLZWORTH
DEP REGNL FORSTR

Exhibit 15
Page 2