1
2
3
4
5              UNITED STATES DISTRICT COURT
6            CENTRAL DISTRICT OF CALIFORNIA
7

|  |  |
|---|---|
| 8  JIM L. BANKS, | Case No. 8:23-cv-01026-MWF-SSC |
| 9         Plaintiff, |  |
| 10     v. | REPORT AND |
| 11  THE PACIFIC CREST TRAIL | RECOMMENDATION OF |
| 12  ASSOCIATION, et al., | UNITED STATES MAGISTRATE JUDGE |
| 13         Defendants. |  |
| 14 |  |

15
16
17      The Court submits this Report and Recommendation to the
18 Honorable Michael W. Fitzgerald, United States District Judge,
19 pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United
20 States District Court for the Central District of California.  The Court
21 recommends that Defendants' motions to dismiss be granted and this
22 action be dismissed with prejudice in part and with leave to amend in
23 part, as Plaintiff has failed to allege sufficient facts to support Article
24 III standing to bring his equal protection claim and has failed to state a
25 due process claim on which relief can be granted.
26
27
28

# REPORT

## I

"This project is for people who identify as Lesbian, Gay, Bisexual, Transgender, Questioning, Intersex, Asexual, Two-Spirit and other queer identities . . . [.]  If you are straight and cisgender please respect that this trail maintenance event is not for you."  (ECF 19 at 6–7.)  These were the words allegedly used by the Pacific Crest Trail Association (PCT Association), a California nonprofit organization, in a website posting seeking volunteers for a trail-maintenance project that had been approved by the U.S. Forest Service and was to occur on land under U.S. Forest Service jurisdiction.  (*Id*. at 3, 6–7, 19.)  Plaintiff Jim L. Banks has brought suit claiming that, by excluding volunteers based on gender identity and sexual orientation, this solicitation violated equal protection guarantees.  (*Id*. at 4.)  The suit also contained a second claim alleging that a subsequent investigation by the U.S. Forest Service into his discrimination complaint violated the Due Process Clause.  (*Id*. at 21–23.)  Banks alleged the following facts.

Banks is an experienced hiker and backpacker.  (*Id*. at 3.)  Nearly two decades ago, Banks began hiking portions of the Pacific Crest National Scenic Trail, which traverses the western-most states of the United States from Mexico to Canada.  (*Id*. at 2–3.)  The trail is administered by the Secretary of Agriculture and receives funding from the U.S. Department of Agriculture (USDA) and the U.S. Forest Service.  (*Id*.)  The PCT Association organizes volunteer maintenance projects on the trail that are approved by the Forest Service.  (*Id*. at 3.)  Out of a sense of duty to maintain the trail, Banks has volunteered thousands of hours to these maintenance projects in the Southern California portion of the trail and has earned the "Extra Mile Award"

from the PCT Association, an honor that goes to "those who have gone the extra mile, beyond the scope of normal volunteering for the benefit of the trail." (*Id.*)

In the summer of 2022, Banks was planning a backpacking trip to northern Washington and thought it would be an opportune time to fulfill his desire to volunteer for a maintenance project in that area of the trail. (*Id.* at 6.) At that time, Banks learned from the PCT Association's website that in mid-September there was a planned three-day trail maintenance project at Harts Pass and that the project had not yet registered the maximum 10 volunteers, making it a "perfect fit" for Banks's planned hiking trip to northern Washington. (*Id.*) Banks then read the description of the project stated above. (*Id.* at 6–7.)

Banks, "a straight, heterosexual, biological male," read this to mean that he was "prohibit[ed] [] from participating in a volunteer trail maintenance project on the [trail] solely because of his sexual orientation and gender identity." (*Id.* at 7.) "[Banks] contemplated registering for the project at that point anyway, but thought that he would not be allowed to or would later be kicked off the list once it was discovered that he was straight and cisgender." (*Id.*) The posting had a "chilling effect" on Banks. (*Id.* at 16.) Banks also had concerns about how he would be treated and if he would be safe should he volunteer for the project. (*Id.* at 7.) Banks then logged off the PCT Association's website without registering for the project. (*Id.*)

In the middle of August, Banks logged back on to the PCT Association's website to register for the project "just to see what would happen." (*Id.*) "However, by this time the project was full and anyone trying to register was instead put on a waiting list." (*Id.*) When Banks registered for the event, he was not rejected but instead was placed on

the waiting list. (*Id.* at 17.) Banks promptly emailed Defendant Wargo, the PCT Association's CEO, to notify her "that the project that was exclusively for the LGBTQIA+ community to the exclusion of people who are not was discriminatory and a violation of [Banks's] civil rights," and further explained that his email "was intended as a heads-up warning to [Wargo] to give her a chance to stop the violation of [Banks's] civil rights before it happened." (*Id.* at 10.) Four days later, having not received a response from Wargo, Banks filed a complaint with the USDA Office of the Assistant Secretary for Civil Rights. (*Id.* at 11.) After Banks filed this complaint, Wargo responded to his email to inform him that she was seeking the advice of counsel. (*Id.* at 12.)

Meanwhile, Banks's complaint to the USDA proceeded through the administrative process and ultimately was referred to the U.S. Forest Service. (*Id.* at 12–18.) An investigation was conducted by the U.S. Forest Service, culminating in the rejection of Banks's complaint. (*Id.* at 14–18.) Defendant Holzworth authored a letter to Banks explaining the reasons for the denial of his claim. (ECF 19-2 at 32–33.) Specifically, Holzworth explained that the PCT Association "did not deny any sign-ups based on sexual orientation or gender identity," that Banks was "not restricted from signing up for the trail work project" but because the event was full when he registered he was "able to successfully sign up for the project waitlist," and ultimately, he "did not offer sufficient evidence of sexual orientation or gender identity discrimination" or that he was "denied a benefit to which [he was] entitled." (*Id.* at 33.)

Banks then filed suit in federal court as an attorney representing himself. In his First Amended Complaint (FAC), Banks brings a Fifth

4

Amendment equal protection claim[1] against the PCT Association, the U.S. Forest Service, and Wargo, in her official capacity, for denying Banks an opportunity to participate in the volunteer program based on his sexual orientation and gender identity.  (ECF 19 at 4, 18–20.)  He also alleges a Fifth Amendment due process violation by the U.S. Forest Service and Holzworth, in her official capacity, for the handling of his administrative complaint.  (*Id.* at 4, 21–23.)  Banks brings his claims directly under the U.S. Constitution and alleges no statutory violations.  (*Id.* at 18–23.)

---

[1] Banks purports to bring his equal protection claim under the Fifth and Fourteenth Amendments of the United States Constitution. (ECF 19 at 2, 18.)  Because Banks is suing federal actors and others he alleges were acting under color of federal authority, his claim is governed only by the Fifth Amendment's Due Process Clause, which provides equal protection guarantees equivalent to those found in the Fourteenth Amendment.  *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007) ("Federal agency[] is not subject to the strictures of the [Fourteenth Amendment's] Equal Protection Clause," but "the Fifth Amendment's Due Process Clause[] subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment") (quoting *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1429 n.18 (9th Cir. 1989)); *but see United States v. Vaello Madero*, 596 U.S. 159, 167 (2022) (Thomas, J., concurring) ("Firmer ground for prohibiting the Federal Government from discriminating on the basis of race, at least with respect to civil rights, may well be found in the Fourteenth Amendment's Citizenship Clause . . . .   [L]ocating . . . an equal protection guarantee in the Fifth Amendment's Due Process Clause raises substantial questions.").

He seeks declaratory and injunctive relief, as well as attorney's fees[2] and costs and "such other and further relief as may be just and appropriate upon the facts and law at issue herein." (*Id.* at 23–25.)

Defendants move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks jurisdiction over Banks's equal protection claim, and under Rule 12(b)(6), asserting that the FAC fails to allege adequately either an equal protection claim or a due process claim on which relief can be granted. (ECF 20, 23.)

On March 29, 2024, pursuant to the Court's order, the parties submitted supplemental briefing on issues of sovereign immunity and the availability of a purely constitutional cause of action. (ECF 34–37.)

As explained below, the Court finds that the equal protection claim should be dismissed with leave to amend, and that the due process claim should be dismissed with prejudice.

---

[2] Banks seeks an award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1). (ECF 19 at 25.) However, *pro se* litigants, even if they are attorneys representing themselves, cannot receive attorney's fees under the EAJA. *Merrell v. Block*, 809 F.2d 639, 642 (9th Cir. 1987) (the plain language and the purpose of the EAJA "leads to the conclusion that Congress intended that an attorney have been retained for a prevailing *pro se* litigant to recover attorney's fees under the EAJA"); *see also Kay v. Ehrler*, 499 U.S. 432, 433–38 (1991) (finding that attorney who represented himself was not entitled to attorney's fees under fee-shifting statute 42 U.S.C. § 1988); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 n.3 (9th Cir. 2002), *as amended* (Feb. 21, 2002) (finding that EAJA should be interpreted consistently with the Supreme Court's interpretations of other fee-shifting statutes).

## II

As an initial matter, Banks argues that the Court should decline to consider the motion to dismiss filed by the PCT Association and Wargo because they did not comply with the meet-and-confer requirement of Rule 7-3 of the Local Civil Rules for the Central District of California.  (ECF 28 at 4–5.)  The rule provides that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."  C.D. Cal. R. 7-3.

"The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).  "When a party fails to comply with Local Rule 7-3, the Court can, in its discretion, refuse to consider the motion."  *Officia Imaging, Inc. v. Langridge*, No. CV 17-2228-DOC (DFMx), 2018 WL 6137183, at *5 (C.D. Cal. Aug. 7, 2018); C.D. Cal. R. 7-4 ("The Court *may* decline to consider a motion unless it meets the requirements of L. R. 7-3 through 7-8." (emphasis added)).  "Failure to comply with the Local Rules does not automatically require the denial of a party's motion, however, particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply."  *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015).  "If a party does not suffer any prejudice as a result of non-compliance with [Local Rule] 7-3, the Court may still consider the merits of the motion[]."  *Ngo v. County of Riverside*, No. EDCV 18-00080 JGB (KKx), 2019 WL 3293184, at *2 (C.D. Cal. Mar. 28, 2019); *Officia Imaging, Inc.*, 2018 WL 6137183, at *5 (electing to consider the merits of defendants' motion to dismiss where plaintiff had suffered no apparent prejudice).

1   Here, the PCT Association and Wargo submit that they conferred
2   with Banks after the filing of the original complaint to discuss the
3   complaint and "Defendants' responsive pleading," and, at that time,
4   "identified deficiencies" in the complaint.  (ECF 20 at 2; ECF 30 at 2.)
5   When Banks failed to correct these deficiencies in the FAC, they filed
6   the motion.  (ECF 20 at 2; ECF 30 at 2.)  Even assuming that this is a
7   violation of the rule, Banks makes no attempt to establish how he was
8   prejudiced; he merely argues that these defendants did not comply with
9   the rule.  (ECF 28 at 4–5.)  Neither is it apparent how Banks could have
10  been prejudiced where the arguments raised in the motion are
11  materially identical to those raised in the motion to dismiss filed by the
12  U.S. Forest Service and Holzworth, and where Banks has not disputed
13  the adequacy of the meet-and-confer on the second motion.  In the
14  absence of a showing of prejudice, it is appropriate for the Court to
15  exercise its discretion to consider the motion.  *See De Walshe v. Togo's*
16  *Eateries, Inc.*, 567 F. Supp. 2d 1198, 1201 n.1 (C.D. Cal. 2008); *Wilson-*
17  *Condon v. Allstate Indem. Co.*, No. CV 11-05538 GAF (PJWx), 2011 WL
18  3439272, at *1 (C.D. Cal. Aug. 4, 2011).

# III

## A

Banks sues Defendants as federal actors[3] and asserts that the Court has jurisdiction pursuant to two statutes.  (ECF 19 at 2, 19.)  The first, 28 U.S.C. § 1331, is properly invoked as it states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution . . . of the United States" and Banks brings his claims directly under the Constitution.  That is not the end of the inquiry, however.  "The plaintiff in a lawsuit against the United States must point to an unequivocal waiver of sovereign immunity."  *Blue v. Widnall*, 162 F.3d 541, 544 (9th Cir. 1998); *see Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014) ("Suits against the government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity.")  Though not invoked in the FAC, the parties agreed through supplemental briefing[4] that because Banks seeks only equitable relief, the Administrative Procedure Act (APA), 5 U.S.C. § 702 *et seq.*, provides the required waiver of sovereign immunity.  (ECF 35 at 3; ECF 36 at 20–24); *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012); *Blue*, 162 F.3d at 544–45.

## B

The second statute listed by Banks, 28 U.S.C. § 1346(a)(2), does not confer jurisdiction.  Section 1346(a)(2) provides for federal district

---

[3] For purposes of the analysis, the Court will presume that the PCT Association and Wargo are federal actors.

[4] The Court requested supplemental briefing on the issue of sovereign immunity as "rules [of subject matter jurisdiction] can never be waived or forfeited, [and] courts are obligated to raise them *sua*

court jurisdiction, concurrently with the United States Court of Federal Claims over civil cases "against the United States, not exceeding $10,000 in amount, founded . . . upon the Constitution . . . ." By its plain terms, § 1346(a)(2), known as the Little Tucker Act, authorizes only actions for monetary damages, not the equitable relief Banks seeks. *Lee v. Thornton*, 420 U.S. 139, 140 (1975) ("The [Little] Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief."); *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (Section 1346(a)(2) "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States"); *Price v. U.S. Gen. Servs. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990) ("The Little Tucker Act authorizes the district courts to hear monetary claims against the United States, so long as they do not exceed $10,000. The Act does not, however, authorize the district courts to grant declaratory or equitable relief against the United States.").

That the Little Tucker Act does not authorize claims for equitable relief is inherent in the purpose of the statute and its relation to the Tucker Act. The United States Court of Federal Claims is vested with jurisdiction over non-tort claims against the United States under the Tucker Act, 28 U.S.C. § 1491(a)(1). Through the companion Little Tucker Act, Congress granted the federal district courts jurisdiction concurrent with the Claims Court over non-tort claims against the United States for monetary damages up to $10,000. 28 U.S.C. § 1346(a)(2). However, except in very limited circumstances not present

_____

*sponte* if the parties fail to do so . . . ." *United States v. Bastide-Hernandez*, 39 F.4th 1187, 1190 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 755 (2023).

here, the Claims Court does not have jurisdiction to award equitable relief under the Tucker Act, and, thus, neither does the district court under its concurrent jurisdiction pursuant to the Little Tucker Act. *See Bowen v. Massachusetts*, 487 U.S. 879, 905 & n.40 (1988) (explaining that "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief" and the Supreme Court has "stated categorically that 'the Court of Claims has no power to grant equitable relief,'" but recognizing the Claims Court's authority to grant equitable relief in limited scenarios under § 1491(a)(2)–(3) (quoting *Richardson*, 409 U.S. at 465)). Accordingly, the Little Tucker Act is not properly invoked in this case.

The Court is unpersuaded by Banks's argument that district courts may exercise jurisdiction over a claim for nonmonetary relief under the Little Tucker Act. (ECF 36 at 7–9.) He relies on *N. Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir. 1985) and *N. Star Alaska v. United States*, 9 F.3d 1430 (9th Cir. 1993). He has misconstrued those cases.

The question presented in those cases was not whether the Little Tucker Act affirmatively *granted* jurisdiction for a claim for nonmonetary relief under the Little Tucker Act. Rather, the question presented was whether the Little Tucker Act *precluded* jurisdiction by prohibiting a waiver of sovereign immunity for a claim that otherwise fell within the APA's general waiver of sovereign immunity for equitable claims against the United States. *N. Star Alaska*, 9 F.3d at 1432; *N. Side Lumber Co.*, 753 F.2d at 1484–85. Through § 702 of the APA, the United States has broadly waived sovereign immunity for claims for equitable relief against the United States, but the section does not "confer[] authority to grant relief if any other statute that

11

grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. In *N. Side Lumber Co.*, the Ninth Circuit explained that the legislative history of the APA showed Congress's intent that the Little Tucker Act be such a prohibition on a waiver of sovereign immunity under § 702 where the claim at issue is based on a contract. 753 F.2d at 1485. Thus, the court found that the contractual claim at issue was barred by sovereign immunity because the Little Tucker Act prohibited the application of the APA's waiver of immunity. *Id.* at 1485–86. Conversely, the court found that the statutory claim was permitted, not because the Little Tucker Act granted jurisdiction and waived sovereign immunity, but because the claim fell within the APA's broad waiver of sovereign immunity and the waiver was not prohibited by the Little Tucker Act because the claim was not based on a contract. *Id.* Because the Little Tucker Act does not waive sovereign immunity for Banks's claim for nonmonetary relief, he may not proceed under such a theory in this action.

## IV

Defendants U.S. Forest Service and Holzworth argue that Banks has failed to state a Fifth Amendment due process claim on which relief can be granted. (ECF 23 at 11–12.) The Court agrees.

## A

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the

1  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

2  U.S. 662, 678 (2009).  All well-pleaded facts must be taken as true.  *Id.*

3       The Due Process Clause of the Fifth Amendment protects

4  individuals against a deprivation of life, liberty, or property that

5  "shocks the conscience" or "interferes with rights implicit in the concept

6  of ordered liberty" (substantive due process) or that is not "implemented

7  in a fair manner" (procedural due process).  *United States v. Salerno*,

8  481 U.S. 739, 746 (1987) (cleaned up).  "A threshold requirement to a

9  substantive or procedural due process claim [under the Fifth

10  Amendment] is the plaintiff's showing of a liberty or property interest

11  protected by the Constitution."  *Ching v. Mayorkas*, 725 F.3d 1149, 1155

12  (9th Cir. 2013); *see Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)

13  ("Procedural due process imposes constraints on government decisions

14  which deprive individuals of 'liberty' or 'property' interests within the

15  meaning of the Due Process Clause of the Fifth or Fourteenth

16  Amendment.").

17  **B**

18       Here, taking as true the facts alleged, Banks has not met this

19  threshold requirement.  He alleges only that the review of his

20  discrimination complaint was not "a just, fair, unbiased, and

21  professional" one.  (ECF 19 at 21–23.)  He points to no recognized

22  liberty or property interest of which he was deprived by the

23  government's allegedly inadequate investigation.  *See, e.g., Contra

24  Mathews*, 424 U.S. at 332 ("the interest of an individual in continued

25  receipt of [social security] benefits is a statutorily created "property"

26  interest protected by the Fifth Amendment"); *Goldberg v. Kelly*, 397

27  U.S. 254, 262 (1970) (finding a federally created property interest in

28

1 welfare benefits and reiterating property interests in unemployment

2 compensation, tax exemption, and public employment).

3   With no liberty or property interests at stake, due process

4 protections are not triggered. *See Vinyard v. Wilson*, 311 F.3d 1340,

5 1356 (11th Cir. 2002) (affirming summary judgment grant on due

6 process claim for lack of liberty or property interest where "[Plaintiff]

7 does not cite, nor have we found, any federal or state court decision,

8 statute, regulation or other source of law that gives [Plaintiff] an

9 entitlement to an internal investigation by the Sheriff's Office of her

10 complaints of police brutality"); *Francis-Sobel v. Univ. of Maine*, 597

11 F.2d 15, 17 (1st Cir. 1979) ("the [EEOC's] action neither deprived the

12 appellant of any interest she may have had independent of the EEOC

13 nor denied her such substantial EEOC-administered benefits as to give

14 rise to a constitutional claim"); *Richardson v. Sauls*, 319 F. Supp. 3d 52,

15 70 (D.D.C. 2018) ("alleged improper handling of an EEO complaint does

16 not give rise to a constitutional violation"); *London v. City of Redlands*,

17 No. EDCV 17-0185-JFW (KK), 2017 WL 3953984, at *4 (C.D. Cal. Sept.

18 5, 2017) (rejecting procedural and substantive due process theories

19 because plaintiff did not have a liberty or property interest at stake in

20 claim regarding the alleged failure to investigate a citizen complaint,

21 including allegation that he was entitled "to have a fair and impartial

22 fact-finding by the city of Redlands when such request/complaint are

23 made by private citizens" (cleaned up)), *report and recommendation*

24 *adopted*, No. EDCV 17-0185-JFW (KK), 2017 WL 3927452 (C.D. Cal.

25 Sept. 7, 2017); *Page v. Stanley*, No. CV 11-2255 CAS (SS), 2013 WL

26 2456798, at *7, 9–10 (C.D. Cal. June 5, 2013) (finding plaintiff had no

27 due process interest to support his claim that employees of the

28 California Highway Patrol "fail[ed] to 'exercise independent judgment'

and conduct a thorough investigation of the allegations in his citizen's complaint"); *Morrow v. City of Oakland*, No. C 11–02351 LB, 2012 WL 2133755, at *15 (N.D. Cal. June 12, 2012) (there is no due process interest to receive a policy-compliant and "impartial" EEOC investigation of complaints); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (no due process liberty or property interest in investigation of citizen complaint); *Hall v. EEOC*, 456 F. Supp. 695, 702–03 (N.D. Cal. 1978) (dismissing a due process cause of action in a case brought by private plaintiffs against the EEOC because "[c]hanges made by the EEOC in the scope and extent of [its] investigative and non-adjudicatory procedures are simply not within the due process clause").[5]  As Banks has shown no due process interest, this claim fails as a matter of law and must be dismissed.

## V

Banks's equal protection claim must also be dismissed.  As currently pleaded, Banks lacks Article III standing for the declaratory and injunctive relief he seeks.[6]

---

[5] Although some of these cases address Fourteenth Amendment due process claims involving state, rather than federal, action, the Fourteenth Amendment merely incorporates the Due Process Clause of the Fifth Amendment and makes the due process protections applicable to actions by the state.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Accordingly, authority addressing Fourteenth Amendment due process claims is equally applicable to Banks's Fifth Amendment claim.  *See Erickson v. United States ex rel. Dep't of Health & Hum. Servs.*, 67 F.3d 858, 861 (9th Cir. 1995); *London*, 2017 WL 3953984, at *2.

[6] Defendants move to dismiss this claim due to lack of standing but their analysis fails to account for the relief sought.  (ECF 20-1 at 11–12; ECF 23 at 6–8.)  Although the Court is permitted to consider facts beyond the complaint in ruling on 12(b)(1) motions, the parties do

## A

Article III of the Constitution requires courts to adjudicate only actual cases or controversies.  U.S. Const. art. III, § 2, cl. 1.  "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "Standing is determined by the facts that exist at the time the complaint is filed."  *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).  The plaintiff bears the burden of demonstrating standing, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021), and must do so "for each type of relief sought," *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

## B

Banks seeks an injunction preventing Defendants "from denying, restricting, or discouraging anyone from participating in trail maintenance projects on the [trail] because of their sex, gender identity, or sexual orientation." (ECF 19 at 23–24.)  To obtain this injunctive relief, he must have alleged that he is facing additional impending injury, not solely past harm.  He has failed to do so.

---

not supply outside facts related to standing for the relief sought.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Thus, the Court considers only the allegations in the FAC, accepts them as true, and construes them in Banks's favor.  *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

**1**

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; that threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers*, 555 U.S. at 493.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (future harm required to show standing for injunctive relief); *Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015) ("Despite being harmed in the past, [a plaintiff] must still show that the threat of injury in the future is certainly impending or that it presents a substantial risk of recurrence for the court to hear [a] claim for prospective relief." (cleaned up)).  To meet this standard, a plaintiff must offer some "concrete facts" to substantiate his fears that the defendants will again harm him in a similar way, and the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (cleaned up).  Further, that threat of future harm must have existed at the time the plaintiff first sued in federal court.  *See Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) ("Thus, we assess Gonzalez's standing for prospective injunctive relief as of the time when he commenced suit, relying on the allegations in the operative amended complaint.").

A plaintiff may point to a policy or practice of a governmental agency to meet this requirement.  For example, in *City of Los Angeles v.*

17

*Lyons*, the plaintiff was subjected to an unconstitutional chokehold by City of Los Angeles police officers and sought injunctive relief to prevent them from using chokeholds in the future. 461 U.S. 95, 97–98 (1983). The Supreme Court held that he could not seek injunctive relief because he had no evidence that he would be subjected to an unconstitutional chokehold again. *Id.* at 105–06. The Court provided two primary examples of how a plaintiff could show the required "real or immediate threat" of recurring harm for purposes of establishing standing: "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 106.

Similarly, in *Armstrong v. Davis*, the Ninth Circuit identified two ways in which a plaintiff can demonstrate that a past injury was likely to recur to establish standing for prospective equitable relief. 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (recognizing *Armstrong*'s identification of two ways to show likely recurrence of injury so that injury is ongoing for purposes of Article III standing). "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong*, 275 F.3d at 861. "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)).

Thus, under *Lyons* and *Armstrong*, a plaintiff may show a sufficient injury for standing to pursue prospective equitable relief by identifying "specific [] policies and practices that would subject [him] to a realistic possibility" of future harm. *Updike v. Multnomah County*, 870 F.3d 939, 948 (9th Cir. 2017).

## 2

Here, Banks seeks relief based on a discrete prior alleged violation without any additional allegations that, at the time he brought suit, the violation was likely to recur. For example, he has not alleged that Defendants always limit trail-maintenance programs to LGBTQ+ volunteers to the exclusion of heterosexual, cisgender volunteers, whether based on a written policy or otherwise. *See Lyons*, 461 U.S. at 106; *Armstrong*, 275 F.3d at 861. Neither has Banks alleged that Defendants have engaged in similar discriminatory practices so regularly in the past as to support an inference that they will continue to do so in the future. *See Armstrong*, 275 F.3d at 861.

Because Banks has failed to allege a concrete threat that Defendants will harm him again in a similar manner, he has not sufficiently alleged injury for purposes of Article III standing to seek prospective equitable relief. *See Munns*, 782 F.3d at 411–12 (considering challenge to government policies related to the response to kidnappings of American citizens in Iraq and finding plaintiffs who suffered past harm could not establish sufficient threat of future harm); *Rosenblum v. Does 1-10*, 474 F. Supp. 3d 1128, 1136–37 (D. Or. 2020) (in action by State of Oregon seeking to enjoin federal agencies from seizing protesters, court rejected State's argument that a risk of future harm existed where State had not presented evidence of any official orders or policies in favor of the allegedly illegal seizures, that these

allegedly illegal seizures are a widespread practice, or that the allegedly illegal seizures had happened more than twice, and finding the State's argument "rests on too little evidence to satisfy *Lyons*"); *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1057–58 (N.D. Cal. 2015) (where soccer players sued soccer organizations for failing to provide adequate concussion-management, court found plaintiffs lacked standing to seek injunctive relief because plaintiffs had not alleged that any plaintiff was at risk of future head injury and that the arguments in favor of such an injury were vague, conclusory, speculative, and nebulous); *Morning Star Packing Co. v. SK Foods, L.P.,* 754 F. Supp. 2d 1230, 1238 (E.D. Cal. 2010) (finding plaintiff lacked standing to bring claim for injunctive relief where the complaint was "devoid of any facts indicating that Defendants are likely to continue utilizing" the challenged practices); *McCarron v. County of Ventura*, No. CV 21-5234 MWF (PDx), 2021 WL 9315371, at *3–4, 6 (C.D. Cal. Dec. 29, 2021) (in action by property owner against neighbors for opposing her application to convert a permitted garage into a residence, citing *Lujan*, *Lyons*, and *Mayfield*, the court found plaintiff had not alleged a sufficient future harm for purposes of standing to seek injunctive relief because the plaintiff had "not allege[d] that she plans to re-file her permit application or that [the defendants] w[ould] re-submit letters in opposition to the application").

**C**

Banks also seeks a declaration that "Defendants PCTA, Wargo, and US Forest Service violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment[7] to the U.S. Constitution when they excluded Plaintiff from participating in the trail maintenance project because of his gender identity and sexual orientation." (ECF 19 at 23.)  However, he has not met Article III's redressability requirement.

**1**

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Courts, however, "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."  *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).  Thus, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).  "The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).

---

[7] As noted above, Banks's claim against alleged federal actors is governed by the Fifth Amendment, not the Fourteenth Amendment.

Stated differently, Article III requires that the relief sought be likely to redress a plaintiff's injuries. *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). As the Supreme Court has explained, "By the mere bringing of his suit, *every* plaintiff demonstrates his belief that a favorable [declaratory] judgment will make him happier. But . . . that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (emphasis in original).

## 2

Here, Banks has provided no basis upon which to conclude that declaratory relief might affect Defendants' future behavior. And this is not the type of circumstance in which courts have found that future behavior might be impacted by a declaration of wrongdoing such as where an ongoing contractual or statutory obligation exists between the parties. *See, e.g.*, *Redd v. Guerrero*, 84 F.4th 874, 884–86 (9th Cir. 2023) (finding standing to seek declaratory relief where prisoner plaintiff sued state judicial officers for failing to expeditiously appoint postconviction habeas counsel as required by state statute, where declaration would increase the likelihood that the state would provide plaintiff with the counsel he sought); *Mendoza v. Strickler*, 51 F.4th 346, 354 n.5 (9th Cir. 2022) (plaintiff could show redressability where she challenged the constitutionality of Oregon's then-applicable system of suspending the driver's license of individuals who failed to pay traffic fines, and the challenged rule was a substantial obstacle in plaintiff's ability to regain her license); *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1107 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 783 (2023) (finding plaintiff had standing to seek declaratory relief where she

"ha[d] already had union dues erroneously withheld from her paycheck twice and remain[ed] employed with the State and therefore at risk of additional unauthorized withholdings"); *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 818–21 (9th Cir. 2017) (finding plaintiff had standing to seek declaratory relief on claim that the government failed to discharge a statutory procedural requirement and a declaratory judgment would have the effect of ordering the government to comply with the statutory requirement); *Burlington N. R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1243 (9th Cir. 1991) (railroad had standing to seek declaratory judgment invalidating tribal ordinance establishing a commission to regulate railroads crossing reservation land); *Bjornstad v. Senior Am. Life Ins. Co.*, 599 F. Supp. 2d 1165, 1170–73 (D. Ariz. 2009) (interpreting a term in an insurance policy and issuing a declaratory judgment that plaintiff was entitled to benefits under the policy).

Because any declaration would be nothing more than a retrospective opinion, Banks lacks standing to seek this form of relief. *See Mendia v. Garcia*, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016) (declining to issue a retrospective declaratory judgment that defendants violated plaintiff's rights); *Zhang v. United States*, No. C19-1211-RSM, 2020 WL 2114500, at *6 (W.D. Wash. May 4, 2020) (finding retrospective declaratory relief unavailable for Fifth Amendment claims against federal defendants); *Rodriguez v. Tilton*, No. 2:08–cv–1028 GEB AC P, 2015 WL 3507126, at *2 (E.D. Cal. June 3, 2015) (holding that federal courts are "not empowered to issue retrospective declaratory

1  relief with respect to allegedly unconstitutional conduct that has

2  ended"). [8]

3                            ***

4        As Banks has no standing for the relief he seeks, the Court may

5  not exercise jurisdiction over his equal protection claim as currently

6  pleaded.[9]

7  # VI

8        Rule 15 of the Federal Rules of Civil Procedure provides that leave

9  to amend should be freely given "when justice so requires."  Fed. R. Civ.

10  P. 15(a)(2).  Although a district court generally should grant a *pro se*

11  plaintiff leave to amend "unless it is absolutely clear that the

12  deficiencies of the complaint could not be cured by amendment," *Akhtar*

13

14          [8] Banks also seeks declaratory and injunctive relief on his due

15  process claim against Holzworth and the U.S. Forest Service.  (ECF 19

16  at 24–25.)  These defendants did not move to dismiss this claim based

17  on standing.  (ECF 23.)  However, the Court must consider *sua sponte* the issue of Banks's standing to bring such claim.  *D'Lil v. Best W.*

18  *Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("[B]oth the

19  Supreme Court and this court have held that whether or not the parties raise the issue, federal courts are *required sua sponte* to examine

20  jurisdictional issues such as standing." (cleaned up)).  Having done so,

21  the Court finds that, even if Banks's due process claim was not subject

22  to dismissal for failing to state the requisite liberty or property interest, it would be subject to dismissal for lack of standing for the same

23  reasons his equal protection claim must be dismissed: Banks has not alleged the requisite injury for the equitable relief he seeks.

24          [9] Because the Court finds that the equal protection claim must be

25  dismissed for lack of Article III standing, it does not address the further arguments that Defendants Wargo and the PCT Association are not

26  state actors, and that Banks has failed to state an equal protection

27  claim.  (ECF 20-1 at 12–18; ECF 23 at 8–11.)

28

*v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), leave to amend may be denied where it would be futile, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

Here, because Banks has shown no liberty or property interest at stake, he cannot state a due process claim and any amendment to that claim would be futile. Thus, Banks's due process claim should be dismissed with prejudice. In addition, because this claim must be dismissed with prejudice, and because Defendant Holzworth is named only in this claim, she should be dismissed from this action with prejudice.

Further, because Banks has not alleged facts sufficient to show standing for the relief he seeks on his equal protection claim, it should be dismissed. However, because it is conceivable that Banks could amend his complaint to allege the requisite injury, he should be given leave to amend this claim.

In sum, Banks should be given leave to file a second amended complaint that contains only an equal protection claim under the Fifth Amendment against the PCT Association, the U.S. Forest Service, and Wargo, that does not invoke the Little Tucker Act as a basis for jurisdiction, and that sufficiently alleges the requisite harm to meet the requirements for Article III standing, as discussed above. *See McCarron*, 2021 WL 9315371, at *3–6 (dismissing claim with leave to amend after finding the plaintiff had not shown a sufficient future harm for purposes of standing to seek injunctive relief).

# RECOMMENDATION

For the reasons above, IT IS RECOMMENDED that the District Judge issue an Order: (1) accepting and adopting this Report and Recommendation; (2) granting Defendants' motions to dismiss; (3) dismissing Banks's due process claim with prejudice; (4) dismissing Defendant Holzworth from this action with prejudice; (5) dismissing Banks's equal protection claim with leave to amend; and (6) granting Banks leave to file, within 30 days of the District Judge's order, a second amended complaint consistent with this Report.

DATED: May 22, 2024

_____

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE